LESTER H. COTTON, *Plaintiff in Error*,

*vs.*

DUNCAN C. REED, *Defendant in Error*.

ERROR TO MILWAUKEE CIRCUIT COURT.

S. sold a vessel to L., who sold her to R. While she was in possession of R., by virtue of the sale, she was seized by the marshal of the United States without lawful authority as was claimed, but was afterwards sold by the marshal, by virtue of valid writs of *fi. fa.* in favor of third persons, *vs.* S. and J., as the property of S., and the proceeds of the sale applied to satisfy the judgments on which the writs of *fi. fa.* issued : Held, in a suit by R. *vs.* the marshal to recover the value of the vessel, that the sale of the vessel by virtue of the writs of *fi. fa.*, and the application of the proceeds of the sale to satisfy the judgments *vs.* S. and J., might be shown by the marshal in mitigation of damages, although the original seizure of the vessel might have been unlawful.

Held, further, that to lay the foundation for this proof, the marshal might show that the sales of the vessel by S. and L. were fraudulent as to the creditors of S., and that consequently the vessel was liable to seizure and sale by virtue of the writs of *fi. fa.* as the property of S.

This was an action of trover for the alleged wrongful conversion of the vessel called the " Nucleus." The plea was the general issue, with notice of special matter. The defendant below took and sold the vessel by virtue of diverse executions against Alanson Sweet, under whom the plaintiff below claimed title to the vessel. Several questions arose upon the trial of the cause below upon the ruling of the court, in regard to which exceptions were taken. The plaintiff below obtained judgment, to reverse which the cause is brought to this court upon writ of error.

On the trial in the court below, Loton H. Lane was called as a witness, and by him it was proposed to prove a bill of sale from the witness to the plaintiff. The defendant below then objected to the introduction of any evidence of property in the plaintiff un-

less the same accrued subsequent to the 28th day of April, 1851, for the reason that prior to that date a judgment was obtained in the District Court of the United States for the district of Wisconsin, against Alanson Sweet and Allen Johnson, upon which execution, with the attachment clause, was issued, upon which the plaintiff was summoned as garnishee, appeared and answered, in which said proceeding the question of the plaintiff's title, as against the creditors of Sweet, was tried, and judgment rendered against the plaintiff, which judgment was then unreversed; all of which the defendant *then* offered to prove.

The judge ruled that the objection was out of place at the time, and received the evidence subject to such objection. The witness then testified that the paper shown to him, (a bill of sale of the said vessel by the witness to the plaintiff,) was executed by him. That he was the owner of the barque Nucleus on the 20th of March, 1851, the date of the bill of sale.

The plaintiff then offered the bill of sale from Lane to Reed, which was objected to by the counsel for defendant, for the reason that the same was not recorded, as required by the act of Congress, of 29th July, 1850. Which objection was overruled by the court, and admitted in evidence, to which the defendant excepted. The witness further testified, that the plaintiff took possession of the vessel at the time; that before the bill of sale was executed, but after the negotiation with Reed, the witness was served with papers. The plaintiff further proved, that the defendant took possession of the vessel on the 4th day of June, 1851; that he kept possession until the 4th day of August, when he sold her; that he was acting as the marshal of the United States, for the district

Dec. Term
1853.

Cotton
vs.
Reed.

of Wisconsin, he was not personally present, when possession was taken on the 4th of June, but such possession was taken by Henry Miller, deputy of defendant ; that the defendant requested Owen Aldrich to call on Miller, who would deliver the Barque Nucleus to him, to be kept by him. Aldrich went with Miller, who had several executions against Sweet and Johnson, to Sweet's warehouse, where they met the plaintiff, Reed ; Miller spoke to Reed about giving up the vessel ; Reed said if Miller had the bond, and would surrender it, he would give up the vessel ; Miller handed to Reed a paper, and Reed told him that the vessel lay at the wharf. Miller then went with several executions and levied upon the vessel, and delivered her to Aldrich to keep.

It further appeared that the vessel had been seized by the defendant as marshal, about the fore part of April, 1851, who had taken a bond from the plaintiff and Lemuel W. Weeks for her re-delivery, upon which she was returned to the plaintiff, and was used in his service until the 4th of June, when the bond was surrendered, and possession taken by the defendant, as before stated. The plaintiff further gave in evidence the bond before mentioned ; also evidence of the value of the vessel, and rested.

The defendant then moved the court for a non-suit, upon the grounds : 1st. That the plaintiff had shown no title, the bill of sale under which he claimed not having been recorded, as required by act of Congress. 2d. Because, by the plaintiff's own showing, there was a voluntary delivery or surrender of the property by the plaintiff to the officer. Which motion was overruled, and the defendant excepted.

The defendant then proved a judgment rendered

the      day of July, 1850, in the District Court of the United States for the district of Wisconsin, in favor of Oakley Beach and others against Alanson Sweet and Allen Johnson, for the sum of $2,493.79 damages, and $42.83 costs ; upon which execution was issued the 7th day of February, 1851 ; which execution and return thereon were read in evidence. The execution contained the statutory attachment clause. The return was :

"I certify that I can find no lands or tenements, or goods and chattels of said defendants whereon to levy; that by direction of the plaintiffs, I did, on the 20th day of March, 1851, serve personally on Levi Blossom, Duncan C. Reed and Loton H. Lane, each, a notice, by delivering the same to each one of them, of which the following is a copy." [The notice required the persons therein named to appear before the court on the return day of the writ, on the first Monday of April next ensuing, to answer interrogatories touching the property &c. in their hands belonging to the defendants in the writ ; and also similar notice served at the same time upon the defendants in the writ.] "And I did then and there attach in the hands of said garnishees severally, and notify them thereof, all and singular, the property, money, choses in action, or other things in their hands, and belonging to the defendant."

The defendant then offered in evidence the records of the proceedings of the said District Court upon the return of the said execution, and further to show that the plaintiff appeared in that court in person, in obedience to the summons in said execution, and made answer touching his property in said vessel ; and that evidence was given concerning the same,

and judgment pronounced thereon. To all of which said offer the plaintiff's counsel objected:

1st. Because the said District Court had not jurisdiction in the garnishee process.

2d. No issue was made up on which judgment could be pronounced, and process issued; and,

3d. Because the statute on that subject is unconstitutional.

Which said objection was sustained by the court, and the evidence rejected; to which the defendant excepted.

The record of the District Court of the United States so offered in evidence, showed that on the return day of the execution therein named, the garnishees mentioned in the marshal's return to the execution, one of whom was the plaintiff Reed, personally appeared and answered, that upon such answer the said court found : "That the schooner Nucleus was transferred by the said Alanson Sweet to the said Loton H. Lane, and by him to the said Duncan C. Reed, and the schooner Andromeda was transferred to the said Duncan C. Reed, by the said Alanson Sweet, for the purpose of hindering and delaying the plaintiffs in this suit, and the said other creditors of the said defendant in the collection of their debts. It is therefore considered and adjudged, and this court doth order and adjudge that the said transfers of the said schooners Nucleus and Andromeda, be and the same are vacated and annulled, and wholly set aside; and that said schooners Nucleus and Andromeda, with their tackle, apparel and furniture, be delivered up to the marshal of this district to be sold. And that said marshal make sale thereof, and make return of his proceedings to this court; and that the proceeds of such sale be

applied to the satisfaction of the judgment of the said
plaintiffs, and such other judgments against the said
Alanson Sweet, or against him and the said Allen
Johnson, wherein executions and attachments have
been issued and served.

And the said record further showed the following
return of the marshal, viz: the said defendant, as fol-
lows:

" I, Lester H. Cotton, marshal of the district of
Wisconsin, do for return, as I am above commanded,
certify that on the third day of May 1851, I seized
the said schooner Andromeda, her tackle, &c., and that
afterwards on the fourth day of June, 1851, the said
schooner Nucleus was upon request surrendered to
me by the said Duncan C. Reed. That I advertised
the said schooner Andromeda for sale, and, as com-
manded, sold said schooner at public auction to the
highest bidder, on the twenty-eighth day of July, 1851,
for the sum of three thousand and thirty-five dollars;
that I afterwards in like manner, exposed for sale the
said schooner Nucleus, and on the twenty-sixth day
of August, sold her to the highest bidder for the sum
of six thousand dollars; that the proceeds of sale of
said schooner Andromeda, were insufficient to satisfy
the said executions in my hands. That I applied the
proceeds of sales aforesaid to the satisfaction of the
judgments of said parties named, and the balance
thereof upon and in part satisfaction of other execu-
tions in my hands against the said Alanson Sweet and
Allen Johnson.                    " L. H. Cotton, Marshal.

"Dated, August 27, 1851."

It was then admitted that besides the judgment of
Beach and others, there were also judgments in the
United States District Court, against Sweet and John-

son, and Sweet individually, which were considered as in evidence, in favor of several other parties, creditors of said Sweet and Johnson, upon which executions were issued on the 7th day of February, 1851, and the like proceedings had upon them, as in the case of Beach and others against Sweet.

The defendant then offered evidence of an alias and pluries executions upon all of said judgments, with the defendant's return endorsed thereon, as follows:

"District of Wisconsin, ss. I return this execution satisfied in part, by proceeds of sale of schooner Andromeda, and balance out of proceeds of sale of schooner Nucleus. Dated August 27, 1851.

"L. H. COTTON, Marshal."

Which were received "subject to any objection appearing upon the executions themselves."

The defendant then proved three several judgments in the said district court, in favor of Alfred Edwards and others, plaintiffs, and said Sweet and Johnson, defendants, one rendered July 3d, 1850, for $1,284.18 damages, and $28.41 costs. One same date, for $639.-29. One rendered Nov. 16, 1850, for $1,273.49 and costs. Also executions issued upon the three several judgments, dated May 6, 1851, and returnable the first Monday of July, 1851, together with the return of the defendant endorsed on each of them as follows:

"Received, May 6, 1851. L. H. Cotton. State of Wisconsin, ss. I return this writ satisfied, by sale of the schooner Nucleus.

"L. H. COTTON, U. S. Marshal."

The defendant then offered to prove that the said vessel, at the time of the alleged taking, was the property of Alanson Sweet, and also a fraudulent transfer thereof to the plaintiff, and that the property was

liable to levy and sale upon execution against Sweet.

To which the plaintiff objected, and the court below rejected the evidence on the ground, " that as the plaintiff claimed for a taking prior to the 1st of May, 1851, and as the defendant has shown no execution issued prior to that date, on which the seizure of the property was made by the defendant, the testimony was incompetent and irrelevant," to which ruling and decision, the defendant then and there, by his counsel excepted.

The defendant then offered to show, that at the time of, and prior to, the alleged taking of the vessel, the said Beach and others, Merritt and others, Clark and others, and Cary and others, had existing judgments in the said District Court against Sweet, upon which executions had been then issued, and were in the hands of defendant as marshal ; and further to show that the plaintiff held said vessel under a fraudulent transfer from said Sweet. To which offer the court replied : " These judgments and executions are already in evidence, and defendant offering no other judgments or executions than those already in evidence, and the said plaintiff waiving all taking or conversion subsequent to the first of May, 1851, and the said defendant admitting that he had no other judgments or executions than those already given or offered in evidence, that such evidence was incompetent until it appeared that the taking was upon one or more of such executions ;" and rejected the evidence offered. To which the defendant excepted.

The defendant then proved by Ellis Worthington, that he was present at the sale of the vessel by the defendant ; that the defendant held in his hands certain executions, and offered the vessel for sale

E*

under them ; that she was bid off for $6,000 by the plaintiffs in the executions. The defendant then offered to prove by the same witness, that at the time of the sale, he had in his possession, amongst others, three several executions out of the said District Court in favor of Alfred Edwards and others, against Sweet and Johnson, and that the defendant pretended and represented that he was making the sale under these executions ; which evidence was objected to, and rejected ; the judge saying that the executions alluded to were already in evidence, and that the evidence offered was rejected by the court, because it tended to show sale on execution issued after the alleged taking ; to which the defendant excepted ; but the court then allowed evidence to be offered by the defendant of any sale made by him, and of any seizure made by him of the vessel, under any execution issued prior to the alleged taking, or prior to the first of May, 1851.

It was also proved that the following rule of the United States District Court was in force at the time of the issuing said execution : "When not otherwise directed by the laws of Congress, writs of execution and the manner of proceeding thereon by the marshal, shall be as prescribed by the laws of Wisconsin."

The parties here rested, when the defendant prayed the court to instruct the jury upon the following points :

I. That the plaintiff in this cause has not shown a title sufficient to enable him to recover in this cause.

Which point of instruction his honor the judge then and there refused ; and to which refusal the said defendant then and there duly excepted.

II. That the plaintiff is estopped by his bond given in evidence, from setting up a title to the property in question.

Which point of instruction his honor the judge, then and there refused, and to which refusal the said defendant then and there duly excepted.

III. That the surrender of the vessel to the plaintiff, and the repossession of her by him, takes away the right to anything more than nominal damages.

Upon which point his honor the judge instructed the jury as follows :

" It may or may not if possession was given to the plaintiff, by reason only of his executing and delivering to defendant a bond, and if plaintiff surrendered the vessel to defendant only by reason of his giving up the bond, then it leaves the parties as they were ; it cannot be regarded as a voluntary surrender, or as a waiver of the wrongful taking."

To which answer and instruction the said defendant then and there by his counsel duly excepted.

IV. That if the jury believed that the defendant took the vessel in question by virtue of an execution against Sweet and Johnson, and that the transfer under which the plaintiff claims, was fraudulent, the plaintiff cannot recover.

To which his honor the judge answered and instructed the jury as follows :

" There is no execution and judgment shown in evidence upon which the vessel appears to have been taken—no legal evidence of a levy."

To which answer and instructions the said defendant by his counsel then and there duly excepted.

V. That it is necessary in this action that the plaintiff should have shown a demand for the property or

a neglect or refusal to deliver before the suit brought.

Which point of instruction his honor, the judge, then and there refused ; and to which refusal the said defendant then and there by his counsel duly excepted.

VI. That the conveyance from Lane to Reed, as given in evidence by the plaintiff, is no evidence against the defendant in this suit, without proof that such instrument of conveyance was recorded in conformity to the act of Congress of 29th of July, 1850, or that the defendant had actual notice thereof prior to the alleged taking in this case.

To which point of instruction his honor the judge, answered and instructed the jury as follows :

" It would not have been evidence had the defendant shown he had an execution, and seized the vessel under it on a judgment in favor of some creditors of Lane or Sweet, but there is no evidence that the taking, prior to the first of May, was under such an execution."

To which said answer and instruction, the said defendant, by his counsel, then and there duly excepted.

VII. That if the jury find a taking by the defendant, prior to the fourth of June, and a surrender of the vessel to plaintiff; that for such taking the plaintiff can only recover for the damage he sustained for detention of the vessel up to the time when he received her back.

Which point of instruction his honor the judge then and there refused ; and to which refusal the said defendant then and there by his counsel duly excepted.

In addition to answers given to the points of instruc-

tion prayed for by the defendants, as set forth above,

his honor the judge instructed the jury generally as follows :·

" This is an action brought by the plaintiff Reed against the defendant Cotton, for the value of a vessel called the barque Nucleus, alleged to have been taken and converted by the defendant.

In order to make out this case, the plaintiff must show that he was lawfully possessed of the vessel in question, and that the defendant wrongfully took her from his possession. As to the possession, you have the testimony of Mr. Lane and several other witnesses, and I presume you will have no doubt on that subject. There are several items of evidence as to the wrongful taking. Mr. Howard says, a keeper, Mr. Perrigo, was put on board sometime before the 10th of May, 1851. There is a bond here executed to the defendant, reciting that he had seized the vessel at sometime, which was shown to have been before she left on her Buffalo trip in April. This may be received as an admission of the taking under the claim of right arising from his being United States Marshal, and having authority to levy on her under executions in his hands. If you find the vessel was so taken, it is a wrongful taking, unless defendant shows an execution issued on a legal judgment on which he seized the vessel, and shows that the seizure was in fact made under such execution. No legal evidence has been given of any such seizure prior to May, 1851, at least none to my knowledge.

Defendant excepts to that part saying, Possession in plaintiff was enough to enable him to sustain the action.

Also to that part of the charge which related to the

taking, and what constituted a wrongful taking by defendant.

Also to that part which related to the giving up of the vessel by reason of the execution of the bond, the giving up by plaintiff to defendant.

Also to that part which stated that if plaintiff surrendered the vessel to defendant for the purpose of getting back his bond, and if he would not otherwise have done it, or defendant would not otherwise given up the bond, then such surrender was not voluntary.

*Emmons & Randall*, for the plaintiff in error.

*First.* The plaintiff did not show such property in the vessel as would entitle him to sustain this action.

The property of a vessel can only pass by an instrument in writing, recorded and certified as provided by law. *Act of Congress of July* 29, 1850; *Sheriff vs. Cadell*, 2 *Espinasse*, 617; *Moss vs. Mills*, 6 *East.* 144; 2 *East.* 399; *Westerdell vs. Dale*, 7 *East.* 306; *Odle vs. Eagle Insurance Company*, 4 *Mason*, 172; *id.* 316, 317.

The possession of plaintiff is shown by his own witness, Lane, to have been under the bill of sale only, and this had no certificate of registry, as the act of Congress requires.

*Second.* The decree, or judgment of the District Court, was a full and complete bar to the plaintiff's right of action.

I. The District Court had jurisdiction as well of the subject matter as of the parties. Under this subdivison we refer the court to the *tenth and eleventh sections of the Judiciary Act of* 1789, *Act of August* 6, 1846, *Revised Statutes, p.* 790, *sec.* 4. The records of the judgment against Sweet & Thompson show

that the plaintiffs in these judgments are not citizens

of Wisconsin, and that the defendants were, and the whole proceedings show Reed to be a citizen of this State, and the value of the property in question is above five hundred dollars. The question of jurisdiction of the person of the plaintiff in this suit, in this particular proceeding, offered in evidence, will be found discussed under another subdivision of this point.

II. The law under which the court proceeded is a valid and constitutional law. 18 *Wend.* 19 ; 5 *Blackford*, 5 ; 6 *Monroe, Harris vs. Wood* ; 6 *Little*, 244 ; 6 *J. J. Marshall*, 27 ; 1 *Mass.* 452–4 ; 4 *Bibb*, 531.

III. The court having jurisdiction to hear and determine the cases vs. Sweet & Johnson, had authority to adopt any form of execution that was in use in this State, and by it to bring the plaintiff within its jurisdiction. *Statutes at large*, 201, *sec.* 3 ; 5 *do. do.* 649 ; *Revised Statutes, p.* 790, *sec.* 4 ; 10 *Wheat.* 51 ; 9 *Peters*, 329–355 ; 1 *Harris*, (13 *Penn.*) 394 ; 6 *do.* 388 ; 14 *Peters*, 301–316 ; 16 *Peters*, 203, 12, 14.

IV. The plaintiff having come in and submitted himself to the jurisdiction of the court, is now estopped from denying it. 10 *Peters*, 300, 330, 331 ; 4 *Cranch*, 121 ; 6 *Pick.* 239 ; 6 *Wend.* 449 ; 6 *Wend.* 431 ; 3 *Mason*, 360, 363 ; 6 *Wheat.* 129 ; 5 *Wendell*, 159 ; 1 *Sandford's Superior C. R.* 19 ; 12 *Smedes & Marshall*, 649.

V. The court having jurisdiction of the parties and the subject matter, the presence or absence of a jury is a question of regularity, and cannot be inquired into in this collateral action. 2 *Halsted*, 108 ; 4 *Mass.* 282, 308 ; 11 *Mass.* 227 ; 14 *Mass.* 233 ; 1 *McLean*, 460 ; 3 *Cow. & H. Notes*, 2*d ed.*, 979, 980 ;

1 *Rawle*, 143–5–6 ; 1 *Woodbury & Minot*, 172, 174 ; 14 *Sergeant & Rawle*, 181–184, *note*, 2d *N. H.* 126.

VI. The plaintiff not having demanded a jury in the District Court, will be deemed to have waived it, and cannot now set up the want of it to defeat the decree of that court. 24 *Wend.* 337 ; 12 *Howard*, 460 ; 26 *Wend.* 43 ; 5 *Hill*, 468 ; 6 *Hill*, 47 ; 3 *Comstock*, 511 ; 13 *Howard*, 195 ; 9 *Peters*, 202 ; 7 *Howard*, 853–4 ; 19 *Vermont*, 478.

VII. The judgment of the District Court was upon the very point in controversy. 1 *Cow.* 1 ; 13 *J. R.*; *Gelston vs. Hoyt* ; *Marsh vs. Pier*, 4 *Rawle*, 16 *Conn.* 12, 20, 21 ; *Gould vs. Stanton*, 19 *Vt.* ; 18 *Conn.* 91, 95 ; 8 *N. H.* 393 ; 3 *East.* 355 ; *Outram vs. Manwood*, 17 *S. & R.* ; 5 *Conn.* 550 ; 6 *Wheaton*, 109 ; 6 *Conn.* 507–516 ; 2 *Wm. Black*, 977 ; 3 *Cow.* 120 ; 17 *Pick.* 4.

VIII. The judgment was no less binding, because the proceeding was not a formal trial of an issue. 17 *Sergeant & Rawle* ; 1 *Monroe*, 148 ; 3 *Monroe*, 51 ; *id.* 260 ; 7 *Term R.* 451 ; 1 *East.* 537 ; 1 *J. C. R.* 93–99 ; 14 *S. & R.*, *Orphan's Court vs. Goff* ; 8 *S. & R.* 351 ; 6 *Wheaton*, 109–113 ; 7 *Pick.* 341 ; 5 *Hill*, 468 : 4 *Day*, 215 ; 4 *Paige*, 463.

*Third.* The Circuit Court should have admitted the evidence offered by the plaintiff in error, to show that the vessel was the property of Sweet, and that Reed held it by a fraudulent title—and this whether the defendant connected himself with the vessel or not. 14 *J. R.* 130, 131 ; 11 *do.* 529 ; 15 *do.* 207 ; 13 *Wendell*, 63 ; 14 *J. R.* 352 ; 8 *Mass.* 515 ; 9 *Barn. & C.* 352, (17 *Eng. C. L.*) 436 ; 20 *Wend.* 24 ; 16 *Conn.* 12, 20, 21.

*Fourth.* The plaintiff, by his bond, was estopped

from setting up title in this case against Cotton. *3d*
*Hill,* 216 ; 8 *N. H.* 254–5 ; 8 *Mass.* 219 ; 8 *Wend.*
483 ; 1 *Dana,* 527 ; 3 *J. J. Marshall.* 164 ; 24 *Pick.*
196 ; 3 *Watts & S.* 517 ; 5 *Dana,* 55 ; 11 *Mass.* 219 ;
9 *id.* 26 ; 2 *Little,* 209.

*Fifth.* The Circuit Court erred in instructing the
jury that there was no execution and judgment shown
in evidence upon which the vessel appears to have
been taken—no legal evidence of a levy.

I. Said instruction interfered with the province of
the jury to find matters of fact. 12 *J. R.* 513 ; 12
*Mass.* 22 ; 11 *Pick.* 368 ; 6 *Peters,* 601–10–11–18–
19 ; 14 *Ohio,* 59 ; 11 *Pick.* 140 ; 8 *Metcalf,* 439 ; 7
*Wend.* 188 ; 6 *Cowen,* 496.

II. If the supposed fact were true, the law is not
as the court instructed the jury ; in all such cases a
levy will be presumed. 19 *J. R.* 517 ; 3 *Gill &
J.* 359.

*Sixth.* The court should have admitted evidence of
the levy and sale of the vessel upon executions issued
subsequent to the alleged taking in May ; if not in
bar of the suit, at least in mitigation of damages. 3
*Dana,* 489–494 ; 8 *Vermont,* 30–33 ; 2 *Hill,* 204 ; 4
*Comstock,* 484–5.

*Seventh.* There should have been a demand before
suit brought,

*C. K. Watkins,* for the defendant in error.

It may be extracted from the confused abstract of
the case, that Reed was owner of the vessel Nucleus ;
that on "the fore part of April, 1851," Cotton took the
vessel from Reed ; that in April Reed gave a receipter
of the vessel, in form of a bond for the return of the
vessel to Cotton ; that in June the vessel was retaken

by Cotton, and bond given up ; that at the first taking of the vessel, Cotton had executions against Johnson & Sweet ; that he did not take the vessel by such executions ; that subsequently, executions upon the same judgments upon which the executions returned as aforesaid were issued, together with the *mandate* of the Hon. Andrew G. Miller, United States district judge for the district of Wisconsin, were put into the hands of the judge's marshal, Lester H. Cotton, and the said marshal, by virtue of these, on the third day of May, *seized* the Andromeda, " and that afterwards, on the fourth day of June, 1851, the schooner Nucleus was upon request surrendered to me by the said Duncan C. Reed," &c. ; that for the original taking of the vessel, Reed brought this action of trover, and the defendant justifies under the process and proceedings referred to.

The questions presented are :

*Firstly.* Can an officer justify the taking of property without process, by process subsequently acquired ?

*Secondly.* Did the officer in this case, act in the taking or selling of the property by legal process ?

*Thirdly.* Is the law constitutional, under which the proceedings were had upon which process issued ?

*Fourthly.* Had the court jurisdiction of the proceedings and process issued ?

*Fifthly.* Does the decree authorize the sale of the vessel in question ?

I. The plaintiff had a property in the goods sufficient to maintain this action. *Cow. Treat. vol.* 1, *p.* 320 *and* 321 ; *Chitty on Pl. vol.* 1, *p.* 170 ; and a registry title need not be proven ; *Cow. & Hill's Notes, part* 2, *p.* 258 ; 3 *Kent. Com.* 130.

II. There was a wrongful conversion by the defend-

ant. *Chitty on Pl. p.* 176 ; *Cow. Treat., vol.* 1, *p.* 329; <span style="font-size:smaller">DEC. TERM 1853.</span>
*Chit. on Pl. vol.* 1, *p.* 180 ; *id. p.* 177 *and* 179 ; *Cow.*
*Treat. vol.* 1, *p.* 343, 329, 340, 341, 15 ; *J. R.* 431.

<span style="font-size:smaller">Cotton *vs.* Reed.</span>

Such property and conversion entitles the plaintiff
to recover. *Cow. Treat., last clause p.* 320.

The conversion of the property by the defendant
has not been justified.

I. The return of the property and taking bond did
not cure the original wrongful taking, but is of itself
evidence of a conversion. *Cow. Treat., vol.* 1, *p.* 329 ;
*id.* 323 ; 23 *Wend.* 462 ; 8 *id.* 610.

The defendant returned that he could find no goods
of the defendants in the execution, &c., and had at-
tached, &c. &c.

I. Then the taking cannot be justified by the *fi. fa.*
proper, because the taking by it is denied.

II. The taking cannot be justified by the attach-
ment clause, because that does not authorize an actual
taking. If goods could be found, they should have
been taken in execution. By statute and the com-
mand of the writ, so far as goods are found, the exe-
cution must be levied, and the officer can only attach
generally for want of goods, and by construction of
law on goods not found, and not upon any goods par-
ticularly, or that could be reached by execution. *R.*
*S.* 550. The subsequent proceedings in the court,
also show that no goods were claimed to have been
taken under process of any form. There is nothing
given or offered in evidence to show that the proper-
ty was taken by any process, and a subsequent taking
is neither in justification or mitigation of damages.
17 *Wend.* 94 ; 21 *id.* 394 ; 24 *id.* 379. And it does
not appear that the property was taken by process,

nor does it appear upon what executions the avails were applied. *See p.* 18, 19.

Again : The act under which proceedings were first had is unconstitutional and contrary to the common law, right of trial by jury.

The statutes of Massachusetts provide that the answer of garnishee shall be taken as true, hence nothing remains for decision of the court but the law, and no right secured by jury trial is taken away. *See also* 2 *Mass. Rep., p* 95, *and note.*

And the principle that no question of fact is to be found resting in conflicting proofs, determines whether the case is proper for equity, or law jurisdiction. Creditors bills under the statute are no exceptions to the rule. It is recognized in all garnishee statutes except Wisconsin.

But see: The decree recites that not only the answer of the garnishee was taken, but testimony upon a title of garnishees to property, and that no trial was had according to common law.

II. The authority for inserting the attachment clause is the special jurisdiction of the Circuit Court, and is not extended to the District Court by the act of Congress. *Conk. Treat. p.* 189 ; *Howe's Prac. p.* 62 ; *Laws Mass., vol.* 2, *p.* 673.

III. The decree of the court could only be entered between the parties to the record, and so far as the decree is between other parties, and the same garnishee, it is void ; and the Andromeda, having sold for enough to satisfy the execution in favor of the parties to the record, was without authority to proceed further. *Conk. Treat. p.* 189 ; *Laws Mass., vol.* 2, *p.* 678 ; *Howe's Prac.* 62.

The proceedings of the court being without juris-

diction, the officer is not protected by process under it, against a stranger who shows a title to goods as against the defendant in such process. 16 *Wend.* 514 ; 2 *J. R.* 45.

*By the Court*, Whiton, C. J.    This was an action of trover, brought for the conversion of a vessel called the Nucleus.  To show his title to the vessel, the plaintiff below (Reed) offered in evidence a bill of sale of her, (which did not appear to have been recorded and certified as provided by the act of Congress, passed on the 29th day of July, 1850,) and proved by a witness (Lane) that he took possession of the vessel.  The defendant below (Cotton) objected to the introduction of the bill of sale in evidence, for the reason that it was not certified and recorded, as provided by the act of Congress above referred to ; but the judge overruled the objection, and the defendant excepted.

The plaintiff, after having introduced this evidence, and proved the taking of the vessel by the defendant, and her value, rested his case.

The defendant then moved for a nonsuit, on the ground that the plaintiff had shown no title to the vessel, because the bill of sale was not certified and recorded, and on the ground that there was a voluntary delivery of the vessel to him.  This motion was overruled, and the defendant excepted.

The defendant, to establish his right to the vessel, proved the recovery of a judgment in the District Court of the United States for the district of Wisconsin, in July, 1850, in favor of one Beach and others, against Alanson Sweet and Allen Johnson, for the sum of $2,493.79 damages, and $42.83 costs; upon

which an execution was issued on the 7th of February 1851. The defendant then offered in evidence a record of the proceedings in the District Court upon the return of the execution, and offered to prove that the plaintiff appeared in that court and made answer touching his property in said vessel, and that evidence was given touching the same. This testimony was objected to by the plaintiff and excluded by the judge, and the defendant excepted.

It appeared that the execution contained the attachment clause (so called) provided for by the statute, (*Rev. Stat.*, *ch.* 102, § 118,) and that, by virtue of it, the plaintiff and others were notified to appear on the return day of the execution, and answer on oath such interrogatories as should be put to them touching the money, property, &c., in their hands, belonging to Johnson and Sweet, or to either of them. It further appeared that the plaintiff appeared in person in the District Court and made answer, in pursuance of the notice which was served upon him, and that the proceedings in the court resulted in an order or decree of the court, by which it was adjudged, among other things, that the schooner in question was transferred by Sweet to one Loton H. Lane, and by him to the plaintiff in this suit, for the purpose of hindering and delaying the creditors of Sweet in the collection of their debts ; that the said transfers of the said schooner be vacated, annulled and set aside, and that the marshal make sale thereof, to satisfy the judgment of the plaintiffs, and such other judgments against Sweet, or Sweet and Johnson, wherein executions and attachments had been issued and served.

It appeared from the return of the defendant, as marshal, that in obedience to the order, he made sale

of the schooner, together with other property, and

applied the proceeds of the sale to the satisfaction of the judgments of the parties named, and the balance in part satisfaction of other executions in his hands against Sweet and Johnson.

It was then admitted that there were other judgments in the said District Court against Sweet and Johnson, in favor of various persons. The defendant then offered in evidence, executions upon all of said judgments, with the return of the defendant as marshal, endorsed thereon, dated 27th August, 1851, by which return it appeared that the executions were returned satisfied in part by a sale of the schooner Andromeda, and the balance out of the proceeds of the sale of the schooner Nucleus. The defendant then read in evidence the record of three judgments in the said District Court, in favor of Alfred Edwards and others against said Sweet and Johnson ; also executions upon the judgments dated 6th of May, 1851, with the return of the defendant, as marshal, endorsed thereon, as follows: "State of Wisconsin, ss. I return this writ satified, by sale of the schooner Nucleus."

The defendant then offered to show that the vessel, at the time of the alleged taking, was the property of Alanson Sweet; that the transfer from Sweet was fraudulent, and that the property was liable to levy and sale upon execution against Sweet. To the introduction of this testimony the plaintiff objected, and it was excluded by the judge, and the defendant excepted.

It appears that many exceptions were taken to the charge of the judge to the jury, and to his ruling in regard to the admission of testimony, but we have not thought it necessary to give an opinion upon any

of his rulings at the trial, except that by which he excluded the testimony last above referred to. One part of the offer, considered literally, was to show that the property belonged to Sweet, a third person, and thus to defeat the plaintiff's action. It was competent for the defendant to prove that the plaintiff did not own the vessel, and if he succeeded in establishing that fact, it is apparent that the plaintiff could not recover. But we have considered the offer, looking at it altogether, as an offer merely to show that the sales of the schooner by Sweet and Lane were fraudulent and void, as to the creditors of Sweet only, and not an offer to show that the plaintiff had not such an interest in the vessel as would enable him to maintain an action against a mere wrong doer. Looking at the testimony offered in this light, we think it should have been admitted for the purpose (if for no other) of mitigating the damages. The objection to it is, that the defendant took the property without legal process, and that, admitting that process came to his hands afterwards, which would have authorized the taking, if the property had belonged to Johnson and Sweet, or to either of them ; still the testimony was inadmissible. The defendant in error contends that, as the original taking was unlawful, and as he seeks to recover damages for the injury he has sustained by it, no testimony should have been received for the purpose of showing that the property belonged to Sweet and Johnson, or to either of them, and was levied upon, and sold to pay their debts, even in mitigation of damages.

There is some confusion in the testimony in regard to the taking of the property. It appears from the bill of exceptions, that the plaintiff below, introduced

in evidence a bond given by himself and L. W. Weeks, to the defendant, the condition of which recited, that the schooner in question had been levied upon by virtue of several writs of *fieri facias*, in favor of different persons, against the property of Johnson & Sweet. The bond was conditioned for the return of the schooner "to satisfy any claim or lien that [may or shall exist, by virtue of the said writs of *fieri facias*, or the attachment clause therein, or by virtue of any order or proceeding had thereon, or upon either of said writs." It appears from the testimony of two witnesses (Weeks and Aldrich), that the vessel remained in the possession of the plaintiff below till the 4th day of June, when she was delivered to the defendant, and the bond executed by the plaintiff and Weeks to him, was delivered up.

This testimony, viewed by itself, shows that the original taking of the schooner, was by virtue of the writs of *fieri facias*, which the defendant had in his hands as marshal, against the property of Johnson & Sweet.

On the other hand, the return of the defendant as marshal, to one of the writs of *fieri facias*, (the only one produced at the trial) says nothing of the levy upon the schooner, but on the contrary states, that he could find no lands or tenements, goods or chattels, of the defendants whereon to levy, and that he notified the plaintiff and others, in pursuance of the attachment clause inserted in the execution, to appear before the court and answer all such interrogatories as might be put to them touching the money, property, or choses in action, belonging to the defendants in the writ, and that he " did then and there attach, in the hands of the said garnishees, and notify them thereof,

F*

all and singular, the property, money, choses in action, or other things in their hands and belonging to the said defendants." The defendant in error contends, that this return shows conclusively, that the taking of the schooner, for which this suit is brought, was not by virtue of the writs of *fieri facias*, and that consequently it was without any legal process whatever. But the condition of the bond above mentioned, shows that the taking of the schooner was by virtue of other writs of *fieri facias*, (as well as by this,) which were not produced at the trial. It is true, that the bill of exceptions states, that it was admitted at the trial, that there were other judgments against Johnson & Sweet, beside the one upon which this writ of *fieri facias* issued, and upon which executions were issued, and the like proceedings had, as in the case of the one before the court.

This admission, we suppose, relates to the writs of *fieri facias* mentioned in the condition of the bond. But it does not follow that because the like proceedings were had upon them, that the return of the defendant to them, disclosed the fact that he did not levy upon the schooner. If he did make the levy, and if by virtue of a writ of *fieri facias*, which contains the attachment clause (so called) provided for by the Statute, a levy can lawfully be made upon the property of the defendant in the writ, in the hands of a third person, who at the same time, by virtue of the attachment clause, is summoned to answer as a garnishee, touching his right, and the right of the defendant in the execution, to the same property, it seems clear, that testimony to show that the schooner belonged to Sweet, was admissible.

It is always proper for the creditor of the vendor

of property, who has levied upon it when it is in the hands of the vendee, to show, when an action has been brought against him by the vendee for taking the property, that the sale by which the vendee claims, is fraudulent and void as to him. He has a right to impeach the sale for fraud, and thus to show that his levy was valid.

But we do not deem it necessary to decide this question, as we think the testimony ought to have been admitted on another ground.

Admitting the taking of the schooner to have been without legal process, and consequently tortious, we think the subsequent application of it to pay the debt of Johnson & Sweet, should have been admitted in evidence to mitigate the damages, and in order to lay the foundation for this testimony, that the defendant should have been allowed to prove, that the property, at the time it was taken, belonged to them, or to either of them. The bill of exceptions shows that the defendant did prove without objection, that Alfred Edwards and others had recovered judgments against Johnson & Sweet, to an amount exceeding $3000; that an execution had been issued on each of these judgments, and that these executions had been returned satisfied by a sale of the schooner in question. But this testimony could not avail the defendant, unless he could be permitted to show that the property belonged to them, or one of them.

The defendant in error contends that this testimony is not admissible in the present suit, and would not be, if this were a contest between Sweet and this defendant. In support of this position, he refers to the cases of *Hanmer vs. Wilsey*, 17 *Wend*. 91, *and Otis vs. Jones*, 21 *id*. 394. The doctrine of these cases is,

that when property has been wrongfully taken by the defendant, the subsequent application of it by him to the payment of the plaintiff's debt, by means of legal process in his favor, cannot be shown in mitigation of damages.

The cases of *Higgins vs. Whitney*, 24 *Wend.* 379, and *Sherry vs. Schuyler*, 2 *Hill*, 204, however, seem to establish the doctrine in the State of New York, that when the original taking of the property is un-lawful, the fact that it has been applied to the pay-ment of the plaintiff's debt, by means of legal process in favor of a third person, may thus be shown.

In the opinion given in the former of these cases, the Court say: "when the property has been so ap-plied by the act of a third person, and the operation of law, that fact should be taken into the account in estimating the plaintiff's damages." The same doctrine is held in Vermont. 8 *Verm. R.* 30.

It is evident that the testimony ought not to be al-lowed to defeat the plaintiff's action, because his right to sue is perfect when the property is taken, and can-not be defeated by the act of third persons. But we see no objection to the reception of the testimony to mitigate the damages. Indeed it would be unjust to permit the plaintiff to recover the value of the prop-erty, when he has had, by the act of third persons, and the operation of law, the same property applied to the payment of his debts. We do not intend to de-cide, that if property should be seized wilfully and without color of right, by a mere wrong doer, or for the mere purpose of enabling a third person to levy upon it, the principle in question ought to be applied. Such a question, when it arises, must be decided on its own merits. But there is no evidence that in this

case, the original taking of the schooner was a mere
wilful trespass, or was for the purpose of enabling
Edwards to make a valid levy upon her.

If this were a contest between Sweet and the defendant, the application of the principle above mentioned would show that testimony to prove the sale of the schooner on the executions in favor of Edwards, should have been admitted for the purpose of mitigating the damages. It is true, that the defendant is the same person who made the sale of the property by virtue of these executions, but he was only the officer of the law in making the sale. He could not refuse to make it, when required to do so by Edwards or his attorney, when the executions were in his hands, without a violation of his official duty; and the property of Sweet in this case was as clearly taken and applied to the payment of his debts " by the act of a third person, and the operation of law," as though another officer had been employed to make the sale.

It thus appears that if this were a contest between Sweet and the defendant, the sale of the schooner on the executions in favor of Edwards and others, should have been admitted in evidence in mitigation of damages. And we think it clear, that the right of the defendant to mitigate the damages by the testimony, should not be affected by the circumstance that Reed, who claims the schooner by a sale from Lane, the vendee of Sweet, is the plaintiff in the suit. We have seen that testimony was received without objection, to show a sale of the schooner on these executions; but it is evident that this testimony could have no effect, without proof to show that the schooner was liable to be sold by virtue of them; and this

fact could only be made to appear by showing that the sale of the schooner by Sweet was fraudulent and void as to his creditors. The defendant therefore had the right, not only to show that the property was sold on the executions against Sweet and Johnson, but the further fact, which he offered to prove at the trial, but which was ruled out by the judge.

If the schooner had been taken from the possession of the plaintiff by a levy of these executions, the testimony would clearly have been competent, for the purpose of defeating the action altogether ; because the property of Sweet could be lawfully taken to pay the debts of Johnson and Sweet. So in the case before us, if the property was liable to be taken and applied to the payment of the debts of Johnson and Sweet, and was so applied by their creditors, we think this fact ought to be taken into the account in estimating the plaintiff's damage, although the original taking was without legal process, and although the process by which the property was subsequently sold and applied was not against the plaintiff's property, but against the property of Johnson and Sweet.

The defendant sought to prove a fact which, if true, showed that the property had been applied to pay a debt of its owner ; for, as to his creditors, Sweet was its owner, if the sale was fraudulent, and the plaintiff has no right to complain that such an application has been made of it.

All the damage which he sustained by an unlawful taking of the property from his possession, he can recover ; but it would be unjust to allow him to recover the value of the property which has been rightfully applied to pay an honest debt.

The judgment must be reversed, and a new trial ordered.