# BROMLEY vs. GOODRICH and others.

FEDERAL AND STATE COURTS: *Avoidance of sales as in violation of general bankrupt law.*

| 40 | 131 |
|----|-----|
| e106 | 337 |

| 40 | 131 |
|----|-----|
| d112 | ¹408 |
| 112 | ¹409 |

1. Sales by an insolvent debtor, valid by the state law, but coming within the provisions of sec. 35 of the federal bankrupt law, are *not absolutely void,* but are merely *voidable* in favor of the bankruptcy, by a proper proceeding, in which the assignee in bankruptcy is presumably the proper plaintiff; and of such proceedings the federal courts have exclusive jurisdiction.

2. Where the proper federal court, in a proper proceeding, has avoided such a sale, the courts of this state will hold it void; but they will not themselves adjudge a sale to be void under the provisions of the bankrupt law, in the absence of such an adjudication by the federal court. *Brigham v. Claflin*, 31 Wis., 607, as to this point, reaffirmed.

3. Property acquired by the plaintiff from his debtor, by a sale valid under the law of this state, was afterwards seized by the sheriff, on attachment, as property of the debtor, who was subsequently adjudged a bankrupt. After the property was so attached, it was taken from the sheriff's possession by the marshal, under a warrant from the bankrupt court, and was sold by the assignee, without any judgment of the bankrupt court that the sale to plaintiff was void, or any suit brought for that purpose. *Held*, that plaintiff is entitled to recover the full value of the property, *Cotton v. Reed*, 2 Wis., 458, distinguished.

APPEAL from the Circuit Court for *Jefferson* County.

Action for an alleged unlawful seizure and conversion by defendants of certain goods (mainly groceries), the property of the plaintiff. It appears from the pleadings and evidence that the goods had been the property of one Giles, a merchant; that they constituted his whole stock, and were of the value of $375; that on the 17th of April, 1875, they were transferred by bill of sale to the plaintiff, to whom Giles was indebted on a note for $400 with interest; that on the 28th of the same month the goods were seized by the defendant *Hutchinson*, as deputy sheriff, upon a writ of attachment against the goods and chattels of Giles, issued by a justice of the peace at the suit of the other defendants, creditors of the said Giles; that about May 1, 1875, Giles filed in the proper district court of the United States for the western district of Wisconsin, his petition to be declared a bankrupt, etc., and was on that day adjudged a bankrupt by said court; that the deputy marshal of said district was, on the same day, by the warrant of said court, directed to take possession of the goods and property of said bankrupt; that said deputy marshal, about May 3, 1875, took the goods in question from defendant's possession, and retained them; that on the 25th of the same month an assignee was duly chosen and qualified in said

bankruptcy proceedings, and an assignment made to him in due form of law; and that such assignee, at the time of the commencement and trial of this action, claimed to hold said goods, or their proceeds, for the benefit of the creditors of said Giles.

The court instructed the jury that the taking of the goods by the defendants was unlawful, and plaintiff was entitled to recover at least nominal damages; that if he obtained a good title to the goods by the bill of sale from Giles, then he was entitled to recover herein the value thereof, with interest from the taking; and that his title would be indisputable but for the bankrupt law. As to the bankrupt law, the court charged that it was "to be upheld and executed and carried out in all its vigor, in all its import, just as fairly and fully as any law that stands upon the statute book of the state of Wisconsin. It is the law of the land, and entitled to be respected accordingly." The court then read to the jury the provisions of sec. 35 of the bankrupt law, and instructed them that if Giles was a merchant and trader, and as such was owing the plaintiff, and was insolvent, and if plaintiff, knowing or having reasonable cause to believe the fact of his insolvency, with a view to obtain a preference over the other creditors, received from Giles the bill of sale above mentioned, and that such bill of sale covered Giles' entire stock of goods, then the sale was fraudulent and void under the bankrupt law.

Plaintiff had a verdict for nominal damages only; a new trial was denied; and from a judgment in accordance with the verdict, plaintiff appealed.

For the appellant, briefs were filed signed by *Hall & Skinner*, and the cause was argued orally by *Daniel Hall*. It was contended on that side, that the bill of sale from Giles to the plaintiff being valid at common law (*Cook v. Rogers*, Sup. Ct. of Mich., Am. Law Reg., October, 1875, p. 633), and also under the laws of Wisconsin (*Brigham v. Claflin*, 31 Wis., 607), a disturbance of plaintiff's title could be worked

out only by the final judgment of the bankrupt court, reached by due process of law, in an action by the assignee against the present plaintiff. *Smith v. Mason*, 14 Wall., 419, 432; *Marshall v. Knox*, 16 id., 551, 556, 557. The bankrupt act does not work a forfeiture without the intervention of court or jury; nor do its penalties fall to the assignee by their own weight. By " void " the act must mean *voidable*, by its limitation, " and the assignee may recover the property, *or the value of it*, from the person so receiving it or to be benefited." In *Allen v. Massey*, 17 Wall., 351, in bankruptcy, the bill of sale was annulled by decree of the court in an equity suit for that purpose. If the sale was absolutely void, Giles could at once have brought replevin. But if no petition in bankruptcy was filed nor assignee appointed, there was no one to question the sale. Under the law, neither this property nor its value could be recovered through any title remaining in Giles after the sale to plaintiff. If recovered by the assignee, the property is held by a new title awarded by way of *penalty*, of which the judgment of forfeiture for the benefit of creditors is the sole source of title. And that the statute which, upon due proof and by due process of law, sanctions such a judgment, is highly penal, is further shown by its adding to the forbidden preference the further penalty of precluding the vendee from proving his claim so as to share in the assets of the bankrupt. Bump's Bankruptcy (8th ed.), 628. And not only was the bankrupt law not designed to execute itself upon sales like this, so as to deprive the purchaser of his rights without any adjudication in the proper court, but congress, under the power to establish uniform laws on the subject of bankruptcy, could not pass a valid act of that kind. Under the 5th amendment to the federal constitution, the vendee could not be deprived of his right of property except by " due process of law;" and this requires a trial and forfeiture declared by the ordinary modes of judicial proceedings. *Rockwell v. Nearing*, 35 N. Y., 302, 307; Cooley's

Con. Lim., 361–364, and notes. 2. The circuit court had no right to try the issue which it presumed to try under the bankrupt law, because the proper parties were not before it; and because it had no jurisdiction of the subject matter. That pertains exclusively to the bankrupt court. *Brigham v. Claflin*, 31 Wis., 607. 3. The property having been wrongfully seized on the attachment, no subsequent proceedings procured by the original trespassers can be set up to mitigate the damages. *Ball v. Liney*, 48 N. Y., 6; *Higgins v. Whitney*, 24 Wend., 379; *Otis v. Jones*, 21 id., 394; *Hanmer v. Wilsey*, 17 id., 91; *Duncan v. Spear*, 11 id., 54; Sedgw. on Dam., 482, 493, 494. 4. Giles could at least transfer to plaintiff $200 worth of his goods, which were exempt by law; and plaintiff was at least entitled to recover for that amount.

For the respondents, the cause was submitted on the brief of *Finches, Lynde & Miller*, who argued that in this action defendants were entitled to show in mitigation of damages a state of facts which conclusively proved that plaintiff had *no title* to the goods; and that consequently the trespass complained of was a mere technical one (*Cotton v. Reed*, 2 Wis., 484; *Kaley v. Shed*, 10 Met., 317; *Squire v. Hollenbeck*, 9 Pick., 551; *Case v. Babbitt*, 16 Gray, 278); that the bankrupt law is "the law of the land," and by its terms the sale to plaintiff was absolutely *void;* that the assignee in bankruptcy, upon the facts as proved, could have replevied the property; that he took it, in fact, by virtue of an order of the bankrupt court; and that plaintiff's only remedy was by action in that court, against the assignee. 2. As to the claim that plaintiff was entitled at least to the amount of property exempt by law, counsel answered that the bankrupt court had decided that where a sale was fraudulent under the law, it was *wholly* void. *In re Stephens*, 3 Bissell, 194.

COLE, J. The circuit court clearly ruled that taking the property in controversy from the possession of the plaintiff,

was not justified by the attachment; "that that was an unlawful act." The principle was recognized, that under the state law a debtor had the right to prefer one creditor to another, and that the plaintiff acquired, by virtue of the bill of sale executed by Giles, a good title to the property, the bankrupt law being out of the question. But the court held, if the sale from Giles to the plaintiff was fraudulent and void under the provisions of the bankrupt law, that then only nominal damages could be recovered in the action. Indeed, the cause seems to have been tried wholly with reference to the bankrupt law, and upon the theory that the circuit court should exert its jurisdiction to enforce the penal provisions of that act. It is obvious that this was directly in the teeth of *Brigham, Assignee, v. Claflin*, 31 Wis., 607. In that case it was held that the courts of this state would not take jurisdiction of an action brought by the assignee in bankruptcy to recover the value of goods transferred in fraud of the bankrupt law, but that the proper tribunal for avoiding the sale was the bankrupt court. That decision certainly rules this case, and shows that the court below erred in submitting to the jury the question whether or not the sale from Giles to the plaintiff was fraudulent under the bankrupt law. The proper forum for litigating that question was the bankrupt court. The learned circuit judge remarked in his charge, that the bankrupt act was a law of the land, entitled to be respected as such, and to be carried out and enforced in all its import and vigor, just as any law which stands upon the statute book of the state. This is true in a certain sense, but plainly is not true in the sense in which the case was put to the jury, as the observations already made show. It has been decided that the state courts should not enforce the penal provisions of that law, although they are doubtless bound to respect and sustain titles derived through bankrupt proceedings, and will give full effect to the adjudications of the bankrupt court. And had the sale from Giles to the plaintiff been avoided by any

proper proceeding in the bankrupt court, and the property adjudged to be a part of the estate of the bankrupt, it would be the duty of the state court to carry out and enforce that decision whenever its jurisdiction was invoked.  But that is quite a different matter from the state court attempting itself to annul a sale valid under the state law because it was designed to give a preference to a creditor which was prohibited by the bankrupt act.

The bill of sale under which the plaintiff claims was executed April 17, 1875, and actual possession of the property was delivered under it.  The property remained in the plaintiff's possession until it was taken on the attachment against Giles by the deputy sheriff.  It appears that early in May, Giles, on his own petition, was adjudged a bankrupt, and the marshal took the property from the possession of the deputy sheriff under a warrant from the bankrupt court.  The property was afterwards sold by the assignee.  As before remarked, the court decided that the defendants could not justify the taking and conversion of the property under the attachment; and further held that the marshal had no right to take it under his warrant, but having taken it and subjected it to the payment of the debts of the bankrupt, if the sale were void under the bankrupt law, no more than nominal damages could be recovered.  This view we deem erroneous.  It is conceded that the original taking of the property was unlawful, and we perceive no ground for holding that the plaintiff's right to recover its value was affected by the bankrupt proceeding.  There are cases which hold that when property has been wrongfully taken by the defendant, the fact that it has been applied to the payment of plaintiff's debt by means of legal process in favor of a third person, may be shown in mitigation of damages.  *Cotton v. Reed*, 2 Wis., 458, and cases cited in the opinion; *Kaley v. Shed*, 10 Met., 317.  And had the sale to the plaintiff been annulled by a suit at law or in equity, brought by the assignee, as indicated in *Smith v. Ma-*

*son*, 14 Wall., 419; *Marshall v. Knox*, 16 id., 551, and *Allen v. Massey*, 17 id., 351, then, within the doctrine of *Perry v. Chandler*, 2 Cush., 237, the fact might be shown in evidence in reduction of the damages. But it is evident that the doctrine of these authorities has no application to the case at bar, for the reason that it is not pretended that the property wrongfully taken has been appropriated to the payment of the plaintiff's debt by means of legal process in favor of any creditor of his; nor has the sale to him been avoided by any proper proceeding in the bankrupt court. The marshal had no right to take the property in the manner he did, and the mere fact that the sale was liable to be declared invalid and fraudulent in some suit which might be instituted by the assignee in the bankrupt court, cannot affect the amount of the recovery, or mitigate the damages. The plaintiff is entitled to recover the full value of the property wrongfully taken from his possession. *Wilkinson v. Wait*, 44 Vt., 508.

The judgment of the circuit court must therefore be reversed, and a *venire de novo* awarded.

On a motion for a rehearing, defendants' counsel called attention to *Bolander v. Gentry*, 36 Cal., 108, where, they stated, the precise question involved in this case was decided, and the court took the view taken by the trial court in this case. They also contended that this court, in the foregoing decision, had overlooked the distinction between *an action in favor* of an assignee in bankruptcy, and a *defense* that the plaintiff in a suit for trespass to goods was not the owner of the goods because of a fraud upon the provisions of the bankrupt law; and that the doctrine that the state courts will not enforce the penal provisions of that law is properly applicable to the former case, but not to the latter. Plaintiff sues the sheriff in a state court. The sheriff, standing in the place of the assignee in bankruptcy, defends, by showing that the goods in question legally belonged to the assignee, and that the assignee

took them out of his possession by an order of the bankrupt court. Had the sheriff refused to deliver the goods upon demand of the assignee, the latter could at once have brought suit against him in the bankrupt court for the value of the property, and, upon the facts here proven, would have recovered the full value. Is the sheriff worse off for doing what the law would have compelled him to do? The supreme court of California hold that he is not.

RYAN, C. J. It is enough to say of *Bolander v. Gentry*, 36 Cal., 105, which the learned counsel for the respondent makes the text of his argument for a rehearing, that it quite overlooks the point on which this appeal was decided.

But in deference to the earnestness and ability of the argument, we have carefully reëxamined the ground of the decision in *Brigham v. Claflin*, 31 Wis., 607, and in this case; and feel compelled to adhere to the rule governing them both, as the settled law of this court. Our reconsideration of the rule has confirmed us in the views heretofore expressed in support of it; and suggested another aspect of the argument.

It is conceded that the sale under which the appellant claims, was valid by the law of this state; but it is claimed that it was void under the bankrupt law.

Sec. 35 of the bankrupt law provides that if an insolvent, within four months before petition filed to declare him a bankrupt, transfer any of his property with a view of preference, to a creditor chargeable with notice of the vendor's insolvency and of the fraud of the sale upon the law, the sale shall be void; and that the assignee of the bankrupt may recover the property or its value from the vendee.

Probably no words are more inaccurately used in the books than *void* and *voidable*. Statutes not unfrequently declare acts void, which the tenor of their provisions necessarily makes voidable only. Perhaps the best excuse made for such inaccuracy is that of PARKER, C. J., cited and adopted by this

court: "Whatever *may be avoided*, may, in good sense, to this purpose, be called void, and the use of the term *void* is not uncommon in the language of statutes and of courts. But in regard to the consequences to third persons, the distinction is highly important, because nothing can be founded upon what is *absolutely void;* whereas, from those which are only voidable, fair titles may flow. These terms have not always been used with nice discrimination; indeed in some books there is a great want of precision in the use of them." *Crocker v. Bellangee*, 6 Wis., 645.

It is quite manifest that it is only as against proceedings in bankruptcy, that the bankrupt act undertakes to avoid sales made by insolvents. If congress had undertaken to give a general rule governing sales, as part of the municipal law of the states, it would have been outside of its authority. The language of the statute plainly shows that congress intended no such usurpation. The avoidance of the sale and the right of the assignee to recover are dependent; clearly making the avoidance a consequence upon the bankruptcy of the vendor. The statute operates upon sales, not of insolvents but of bankrupts only. If an insolvent, in view of proceedings in bankruptcy against him, which happen not to be taken or not to be entertained by the bankrupt court, make a sale within the conditions of the section, it is quite clear that the bankrupt law would not and could not have any effect to avoid the sale. And if the petition in bankruptcy against the vendor should be taken later than four months after the sale, the bankruptcy would not affect the validity of the sale. In any case, the sale would remain valid under the state law, and the legal title in the vendee, until the vendor be adjudged a bankrupt. And it seems quite clear that the true construction of the bankrupt law makes such sales voidable only, not void, notwithstanding the inaccurate use of the latter word. When avoided, they may be void *ab initio*, though valid until avoidance.

And the mere bankruptcy of the vendor does not determine

the question.    Several conditions must concur to avoid his sale.    It must be made within four months before petition filed; with a view to give a preference; to a creditor having cause to believe the vendor insolvent and the sale in fraud of the law.    With full effect given to the language of the bankrupt law, the vendee is entitled to his day in court before his title can be avoided; and it belongs to the judicial function to avoid it, upon proper proof of the necessary conditions, by proper judgment of law.    Until so avoided, the sale remains valid.    *Crocker v. Bellangee, supra.*    And it is voidable, only in favor of the bankruptcy.

It is obvious that the assignee in bankruptcy does not take judicial power to avoid sales, voidable under the bankrupt law.    He is merely the ministerial officer of the bankrupt court.    He is presumably the proper plaintiff, in the proper proceeding, to avoid such sales.    It may or may not be that the bankrupt court itself has jurisdiction of such proceeding. It may or may not be that such proceeding must be taken in another court, under its authority.    These are questions for the federal courts, not for the state courts.    But whatever be the proper nature and forum of such proceeding, it is a proceeding by a federal officer, under federal authority, to enforce a federal statute.    And it is quite clear that federal courts have exclusive jurisdiction of it.*    It is very certain that the judgment of the proper federal court avoiding or affirming such a sale, as a fraud upon the bankrupt law, would be conclusive on all state courts; while such a judgment of a state court would not be binding on the bankrupt court.    The courts of this state take, probably could take, no jurisdiction to administer the bankrupt law or to avoid sales or enforce forfeitures under it.    And as no proceeding appears to have been taken under the authority of the bankrupt court, in this

* See on this point, in addition to cases in the federal courts cited in *Brigham v. Claflin,* 31 Wis., 607, *Gelston v. Hoyt,* 3 Wheat., 246.

case, to execute the bankrupt law by avoiding the sale under which the appellant claims, that is precisely what the court below assumed to do, and what we are invited to affirm on this appeal: a plain intrusion upon federal jurisdiction.

Had the proper federal court, in a proper proceeding, avoided the sale on which this case turns, it would have been the duty and the pleasure of the courts of the state to hold it void. But the state courts cannot assume to supply adjudications under the bankrupt law, which the proper federal court has failed to make. The sale under which the appellant claims was voidable only, in aid of the bankruptcy only, and has not been avoided by any court having jurisdiction to avoid it.

It was very safe for the learned judge of the court below to say that the bankrupt act is the law of the land and entitled to be respected accordingly. That is equally true of all valid acts of congress; and of itself was a harmless truism. But when that was followed by the *non sequitur* that it is to be executed, in all its vigor and import, by courts and juries of this state, as fully as any statute of the state, it almost seems to have been forgotten that the law of the land is to be administered only by courts having delegated jurisdiction to administer it. The same remark might as well have been made of the revenue law or other federal statutes imposing forfeitures and penalties, which we presume the circuit courts of this state will hardly amuse their leisure by assuming to administer. Certainly the state courts are created by the constitution for different purposes and with different jurisdiction. And we may be permitted to suggest that it is an ill example of judicial order, in a circuit court, thus cavalierly to set aside a solemn adjudication of this court, like *Brigham v. Claflin*, by a plausibility which might pass for a smartness in a popular speech, but hardly rises to the tone of juridical discussion; very noticeable in so able and learned a judge.

It is not difficult to see how the assumption of jurisdiction by the state courts to enforce penalties and forfeitures under

the bankrupt law and other federal statutes, would lead to conflict of jurisdiction and judicial disorder. It is perhaps unfortunate that the federal constitution left any ground for concurrent jurisdiction of the federal with the state courts. It has led to some mischievous confusion of adjudication and some vicious usurpation of jurisdiction, by both federal and state courts. In this day, this is a great and growing evil. And we propose, in this state, for the sake of judicial order, and of the integrity of the federal and state governments, to do what we may towards confining the courts of the state to state jurisdiction, and the courts of the United States to federal jurisdiction.

· *By the Court.*—The motion for a rehearing is overruled.