## GOLDBERG ET AL., v. HARLAN, TRUSTEE.

[No. 4,478. Filed June 4, 1903. Rehearing denied December 9, 1903. Transfer denied June 30, 1904.]

BANKRUPTCY.—*Preference of Creditors.*—Partners borrowed money from a bank with which to buy a stock of goods, giving their notes with surety. The notes were renewed from time to time, and the firm became insolvent and sold and transferred the entire stock of goods to the surety, paid from the proceeds thereof the amount due the bank on the notes, and divided the remainder between themselves. Thereafter, within four months of such transfer, such partners were adjudged bankrupts on a petition filed about the time of the transfer of the stock of goods. *Held,* that the sale and transfer was an unlawful preference within the meaning of the bankruptcy law of 1898 (Act 1898 c. 541, 30 Stat. 562). *pp. 465–475.*

SAME.—*Transfer of Property by Bankrupt.—Recovery by Trustee.—Demand.*— No demand is necessary before the commencement of an action by a trustee in bankruptcy to enforce his rights as such trustee to property unlawfully transferred by the bankrupt. *p. 475.*

From Elkhart Circuit Court; *Joseph D. Ferrall,* Judge.

Action by Albert G. Harlan, trustee in bankruptcy, against Jacob Goldberg and others. From a judgment for plaintiff, defendants appeal. *Affirmed.*

*H. C. Dodge* and *P. L. Turner,* for appellants.

*J. M. Van Fleet, V. W. Van Fleet, Andrew Anderson, James Du Shane* and *W. G. Crabill,* for appellee.

HENLEY, J.—Appellee Albert G. Harlan is the trustee in bankruptcy for Hannah Nadel and Flora Kempner. Max Kempner is the husband of Flora Kempner, and was the manager of the business of the firm of Nadel & Kempner. Jacob Goldberg was a surety on a note due from said

VOL. 33—30

firm to the St. Joseph National Bank. Harlan commenced this action against appellants to enforce his rights as trustee in bankruptcy, as given and conferred by sections sixty (b) and sixty-seven (e) of the federal bankruptcy law, which became effective July 1, 1898.

The facts relied upon and stated in the complaint of the trustee were the following: That in January, 1900, Jacob Kahn, Henry Kahn, and Jacob Vohlbach filed in the district court of the United States for the district of Indiana their petition for involuntary bankruptcy against the appellants, Hannah Nadel and Flora Kempner, as partners, then and theretofore doing business as Nadel & Kempner— they then being citizens and residents of the State of Indiana, and doing business in the city of Elkhart, in said State—praying said district court to adjudge said appellants bankrupts; that notice was given to said appellants of the filing of said petition, and such proceedings were had, that upon an appearance to said petition by said appellants, and after due consideration, to wit, on the 2d day of March, 1900, the said appellants were by said court duly adjudged involuntary bankrupts; that thereafter, immediately, the said cause was referred by order of said court to the referee in bankruptcy having jurisdiction in said county, and notice was given to the creditors for a meeting, fixing the time and place, and at such meeting the appellee was chosen by said creditors as trustee in bankruptcy, and that thereupon, on the 9th day of April, 1900, appellee qualified by, giving a bond as such trustee, and his appointment was duly approved; that on the 19th day of March, 1900, the said bankrupts filed their schedule in bankruptcy, but failed, neglected, and omitted to name in said inventory all of their property which should have been turned over to the trustee; that some two or three years prior to January, 1900, the husband of the appellant Hannah Nadel and the husband of the appellant Flora Kempner were partners doing business in the city of Elkhart, aforesaid; that they

became insolvent, and, under a foreclosure, by virtue of a certain chattel mortgage and other legal proceedings against them by their creditors, all of the effects of every character whatever of said firm were sold and transferred to their creditors, and that thereupon a new firm was organized, consisting of said Hannah Nadel and Flora Kempner, for the purpose of buying in the assets from the purchaser under said proceedings; that the said Flora Kempner and Hannah Nadel purchased said assets, and commenced business in said city under the same name of Nadel & Kempner —the new firm consisting of the said women as aforesaid; that the said firm had to borrow money with which to make said purchase, and that they did, as partners, borrow of and from a banking house in the city of Elkhart the sum of $2,500, which sum was subsequently increased to $2,700; that this sum was borrowed about the time of the purchase by the said two women as partners; that they executed to said bank the promissory note or notes of said firm for the sum of money so borrowed; that the appellant Jacob Goldberg knowing of the insolvency and financial feebleness of said partnership, and one of the members of the partnership being a relative of his, or a connection, did agree with the said bank to be surety on the said notes for money so borrowed, and did, as such surety, sign said paper, and did continue to sign renewals of said paper up to the time hereinafter mentioned, when the same was paid; that said firm of Nadel & Kempner continued in business, but the said business was in charge of and kept under the control and management of Max Kempner, appellant herein, who was and is the husband of the said Flora Kempner, and is the brother of Hannah Nadel; that the said partnership did not have sufficient capital wherewith to do business without buying goods on credit, and was unable to discount its bills, and had to and did purchase goods on credit; that appellee is informed and believes, and therefore avers the fact to be, that said time given was thirty, sixty, and ninety days;

that the said notes so indorsed or signed by the appellant Jacob Goldberg, as surety as aforesaid, were renewed from time to time until the latter part of December, 1899; that the said paper then matured, and the said makers and parties liable on said notes were notified of the fact and payment was demanded of them; that at that time the total debt and liability due to the said bank was $2,700, and that the said appellant Jacob Goldberg was then surety on said notes, or indorser thereon, and that the said paper was then due; that at the said last-named date, to wit, the latter part of December, 1899, the said firm of Nadel & Kempner was largely indebted to divers other creditors for goods and merchandise purchased on credit, which fact was well known to all of the appellants herein; that, in addition to the liability of $2,700 due to said bank, the said firm was indebted to other creditors, last above named, in the sum of $4,000; that the appellants, with full knowledge of the facts, and after said paper had been due and payable and unpaid for a month, met together on January 12, 1900, and entered into an arrangement by which to protect the said Goldberg, and to prefer him as indorser on said paper; and for that end and for that purpose it was then agreed between the said Nadel and Kempner and said Goldberg that said Goldberg should purchase the existing stock of goods and fixtures and furniture owned by said Nadel & Kempner, and should give a check for the purchase money to the said Nadel & Kempner, and that they should apply the proceeds, in part, to the payment of said note to said bank, and that the rest and residue of said purchase money should be divided between the said Nadel & Kempner on a pretended dissolution of partnership, and that the said balance was to be appropriated by the said individual members, and claimed by them as an exemption under the laws of the State of Indiana, in the event any creditors should see fit to proceed against them; that pursuant to the said agreement a bill of sale was on the 13th day of January, 1900, pre-

Goldberg v. Harlan.

pared by said Nadel & Kempner, and by them executed and delivered to the said Jacob Goldberg, whereby they sold to him the said stock of goods, with all furniture and fixtures, and that it was then agreed between the said parties that the value of said goods was $3,300, or thereabouts, and that said furniture and fixtures were worth $150; that upon the execution of said bill of sale by said parties to Goldberg, on the date last aforesaid, said Goldberg did draw his check on the bank which held the said paper of said Nadel & Kempner, for $3,300, and delivered it to them, the said Nadel & Kempner; that they, pursuant to the arrangement before made, then took said check to the bank, and gave the same to the said bank, and it was then found that the debt due from Nadel & Kempner was $2,713; that the said bank accepted the said check, and, after deducting from the amount of said check the sum of $2,713, which was applied to the payment of said debt so due to the bank, paid to said Nadel & Kempner the residue called for by said check, which was about $500, and the said Nadel & Kempner took said balance and appropriated it to their own use; and that by said acts the said Nadel & Kempner did pay the said debt due to said bank in full, and did receive a balance of money amounting to $500; that at the date of the payment of said debt to said bank by said Nadel & Kempner in manner aforesaid, and at the date of the execution of said bill of sale, the said Nadel & Kempner were wholly insolvent, and unable to pay said bank and unable to relieve said Goldberg of his liability to said bank under any circumstances, as aforesaid, which fact was well known to all of said appellants; that the said stock of goods, furniture, and fixtures, together with a small piece of real estate, to wit, lots 213 and 226 in Kenwood's addition to Elkhart, Indiana, of the value of $200, and book accounts worth $200, constituted all of the assets of said firm, and that the individual members of said firm had no other property out of which they could have paid their debts;

and that they did not, nor did either of said members, have any property subject to execution in the State of Indiana, or anywhere else, or any other property out of which their debts, or the debts of either of them, could have been collected, all of which facts were known to the said Goldberg; that the said sale, so made as aforesaid, was made by said parties and accepted by said Goldberg with full knowledge of the situation, and that he, the said Goldberg, had reasonable cause to believe that the said sale was intended to be, and was designed to be, a preference to him; that the said sale was illegal and void and fraudulent for the further reason that said sum of money so paid for said stock of goods by said Goldberg was paid under and pursuant to a conspiracy by and between said parties, and that it was the purpose and design of said parties that upon going through the form of said sale the said Max Kempner should be retained and allowed to remain in possession of said goods, and should remain the manager of said business, and should draw a salary therefor; that this was actually done, and that there was no outward change in the name of the firm, nor in the manner of conducting said business, but that the said Max Kempner continued as theretofore in charge of the same, and continued selling said goods at the same place of business where the said firm had prior thereto done business, and drew a salary, as he had always done, which was the understanding of all parties at the time of said sale; that since said sale there has been sold a large portion of the stock of goods on hand and in existence at the time and date of said sale, and the proceeds of said sale have been appropriated in part by said Max Kempner, and in part by said Goldberg; that a part of the proceeds of said check, over and above the amount necessary to pay said indebtedness to said bank, has been appropriated by either said Hannah Nadel or the said Flora Kempner, and that the real estate was appropriated by the other one of said parties, and that

the disposition which said partners have made of said property can not be stated by appellee, for the reason that he is not advised fully as to what disposition was made thereof; but he avers that a part of the stock of goods so sold as aforesaid on January 13, 1900, is now in said store in said city of Elkhart, in the possession of said Goldberg or said Kempner, or both of them; that the foregoing acts were done with the intent to hinder, delay, and defraud other creditors of said Nadel & Kempner, and that the preference obtained by said Goldberg was taken and accepted by him with full knowledge of the insolvency of said firm, and of the outstanding liability to other creditors, and that the assets gotten by him constituted, practically, all of the assets of said firm, and that the said acts and deeds were done and performed under a conspiracy of said parties by which all of said assets were to be appropriated and divided among these appellants as aforesaid, to the exclusion of all other creditors; that debts have been proved by other creditors against said defendants in the sum of $2,731.40, and that there are no assets with which to pay the same, save the assets aforesaid, consisting of the said stock of goods and of the money paid out in preference as aforesaid.

The relief asked, as shown by the prayer of the complaint, was as follows: "In consideration whereof and inasmuch as the plaintiff is entirely without remedy according to the strict rules of the common law, and can only have relief of an equitable character, plaintiff prays that all of said goods and chattels and merchandise, and goods and chattels of whatever character charged to be the assets of said firm, and such land and book accounts, be decreed to be assets of the estate of said Nadel & Kempner, bankrupts, and that the defendants, and each of them, in so far as they are in possession of said assets, be required and decreed to turn over and deliver the same to plaintiff, as trustee, for the benefit of the creditors, ratably and

equally, to be administered by plaintiff as trustees in bankruptcy for the benefit of such creditors; and, further, that the defendants, and each of them, be required to make a full and complete discovery of and concerning said assets, and the money realized from the sale of any and all of the goods sold, to the end that an account may be taken, under the direction of this court, for all money received on such sale, and all profits therefrom from the 13th day of January, 1900, and that the amount found to be due on such account may be required to be paid over to the plaintiff for the benefit of the creditors of said firm of Nadel & Kempner, and that said Goldberg be required and ordered to pay to the plaintiff the sum of $4,000 for and on account of goods taken, received, and appropriated by him as aforesaid; and that the said Goldberg be also required to pay over to the plaintiff all profits which were made by him in the sale of such goods; and plaintiff prays that he have such other and further relief in the premises as may be just and equitable."

The trial court held the complaint good against appellant's demurrer. Appellants filed an answer of general denial. A special finding of facts was made by the court and conclusions of law stated thereon. By the special finding of facts every material allegation of appellee's complaint is established. It is therefore unnecessary to repeat any part of it here. The conclusions of law were: (1) That the said sale by Nadel & Kempner to Goldberg and the payment of $2,713 was an unlawful preference; (2) that the plaintiff, as trustee in bankruptcy of said Nadel & Kempner, is entitled to the possession of said goods and personal property sold for said sum of $2,713, as against all defendants; (3) that the plaintiff is entitled to a judgment that said Goldberg within five days deliver to the plaintiff the property so sold to him on January 12, 1900, by said Nadel & Kempner; and that in case of nondelivery of said goods the plaintiff shall recover from said Gold-

berg the amount paid on said notes, to wit, $2,713, with interest from the date of commencement of this action, being August 15, 1900; that the plaintiff is entitled to a judgment for costs against all the defendants.

It is first contended that the court erred in overruling the demurrer of Jacob Goldberg to the complaint. It is provided by section sixty of the bankruptcy law of 1898, that "A person shall be deemed to have given a preference if, being insolvent, he has procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. If a bankrupt shall have given a preference within four months before the filing of a petition, or after the filing of a petition and before the adjudication, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person."

The transaction between Goldberg and Nadel & Kempner, by which Goldberg attempted to secure himself by the purchase of the stock of goods, was undoubtedly lawful under our state laws. An insolvent debtor has a right to prefer his creditors. *O'Donald* v. *Constant,* 82 Ind. 212; *Dice* v. *Irvin,* 110 Ind. 561; *Lee* v. *Gross,* 126 Ind. 102; *John Shillito Co.* v. *McConnell,* 130 Ind. 41. It is equally true that the St. Joseph National Bank had the right to deduct from the funds of Nadel & Kempner, represented by the Goldberg check, the amount of their indebtedness to the bank. *Bedford Bank* v. *Acoam,* 125 Ind. 584, 9 L. R. A. 560, 21 Am. St. 258.

In the case of *Swarts* v. *Siegel,* 8 Am. B. R. 689, the court, in an exhaustive opinion, in which a great many

cases are cited and reviewed, said: "An indorser, an accommodation maker, or a surety on the obligation of a bankrupt is a credulor under the act of 1898, and a payment on such an obligation by the principal debtor while insolvent to the innocent holder of the contract within four months before the filing of the petition for adjudication in bankruptcy will constitute a preference which will debar the indorser, accommodation maker, or surety from the allowance of any claim in his favor against the estate of the bankrupt unless the amount so paid is first returned to that estate." And in the same case it is held that the surety on the note of the bankrupt, is as much his creditor before he has been compelled to pay the note as afterward. See, also, *Landry* v. *Andrews,* 22 R. I. 597, 48 Atl. 1036, 6 Am. B. R. 281.

The fact being established that Goldberg was a creditor of the bankrupts, it must certainly follow that the allegations of the complaint state facts sufficient to show that there was an attempted preference of the debt upon which he was liable, within the prohibited time. And it would seem that this would be true, under the authorities, without the averments of fraud and conspiracy; the law itself prohibiting such preference, whether the act by which preference was created was or was not in good faith. *Swarts* v. *Siegel, supra,* and cases cited.

The strength of appellee's complaint in this case is well illustrated by the case of *In re Beerman,* 112 Fed. 662, 7 Am. B. R. 431. In that case a creditor of an insolvent debtor, a month before his bankruptcy, procured a third person to loan the debtor money to satisfy his claim, the lender taking a mortgage upon the debtor's stock of goods to secure the loan, knowing at the time that the money so loaned was to pay the creditor's claim. It was there held that the mortgage was void, under the bankruptcy act, because, if enforced, it would enable the creditor to obtain

indirectly a preference which he could not have had if he had acted directly with the debtor.

In regard to the meaning of the word "preference," the case of *Stern* v. *Louisville Trust Co.,* 112 Fed. 501, 7 Am. B. R. 305, holds that the word "preference," while not defined in set terms in the bankruptcy act, includes everything in the nature of property which has capacity for being taken and appropriated to the satisfaction of debts provable under the act, and may be either of a legal or equitable nature, and that however devious the method by which a creditor acquires property which is subject at law or equity to be appropriated to the payment of the debtor's obligations, there is a preference within the meaning of the act.

No demand for a restoration of the goods or their value was necessary before the commencement of the action. The whole transaction under the bankruptcy act was unlawful and void, and in such cases demand is unnecessary. Brandenburg, Bankruptcy (3d ed.), §§1104, 1214; *Bull* v. *Houghton,* 65 Cal. 422, 4 Pac. 529; *Barbour* v. *Priest,* 103 U. S. 293, 26 L. Ed. 478; *Toof* v. *Martin,* 13 Wall. 40, 20 L. Ed. 481. The trial court properly overruled appellants' demurrer to the complaint.

We think the conclusions of law stated are correct upon the facts and fall within the strict meaning of section sixty (b) and section sixty-seven (e) of the bankruptcy act. What we have said disposes of all the questions raised by both appellants and appellee.

The judgment is affirmed.