# CASES DETERMINED

AT THE

# August Term, 1905.

---

JACKMAN, Trustee, Appellant, vs. EAU CLAIRE NATIONAL
BANK, Respondent.
SAME, Respondent, vs. SAME, Appellant.

*March 14—October 3, 1905.*

*Bankruptcy: Trustee: Action to recover preferences: Demand: Plead-*
*ing: Conditions precedent: Witnesses: Adverse party: Cross-*
*examination: Instructions to jury: Conversion: Trover: Prefer-*
*ences: Court and jury: Notice of insolvency: Cause of action:*
*Former suit: Judgments: Appeal and error: Logs and lumber:*
*"Lien claims."*

1. In an action brought by the trustee of a debtor, who had been
   adjudicated a bankrupt under the provisions of the act of con-
   gress relating to bankruptcy (ch. 541, 30 U. S. Stats. at Large),
   to recover mortgaged property transferred in fraud of that act,
   the complaint alleged that the property had been converted be-
   fore the commencement of the action and its proceeds applied
   to the mortgage indebtedness due the defendant. *Held,* that
   the defendant, by such conversion, had put it out of its power
   to restore the property, and hence no demand for its return was
   necessary.
2. In an action brought under subd. *b,* sec. 60, ch. 541, 30 U. S.
   Stats. at Large (providing that "if a bankrupt shall have given
   a preference within four months before the filing of a petition,
   or after the filing of the petition and before adjudication, and
   the person receiving it, or to be benefited thereby, or his agent,
   acting therein, shall have had reasonable cause to believe that
   it was intended thereby to give a preference, it shall be void-
   able by the trustee and he may recover the property or its value
   from such person"), it is not necessary for the trustee to allege
   in his complaint that any creditor has filed a claim in the bank-

ruptcy proceedings, or any fact showing that it is necessary to recover the alleged preference.

3. Where, on the trial, the president of the defendant bank has been called for examination as an adverse party, it is not prejudicial error to refuse to permit defendant to cross-examine him.

4. In an action in trover brought by the trustee of a bankrupt to recover the value of the property alleged to have been wrongfully converted in fraud of the bankrupt act (ch. 541, 30 U. S. Stats. at Large), whether there was one or more classes of creditors, and in what manner the property sought to be recovered would be administered, did not vary the legal rights of the trustee, and hence an instruction that all the creditors of the bankrupt belonged to the same class, if erroneous, was not prejudicial.

5. An action by the trustee of a Wisconsin bankrupt to recover the proceeds of property transferred in fraud of the bankrupt act (ch. 541, 30 U. S. Stats. at Large) is within the jurisdiction of and properly brought in the state courts of Wisconsin. *Brigham v. Claflin*, 33 Wis. 607, and *Bromley v. Goodrich*, 40 Wis. 131, distinguished.

6. In an action by the trustee of a bankrupt to recover the proceeds of property alleged to have been transferred in fraud of the bankrupt act (ch. 541, 30 U. S. Stats. at Large), it appeared that the transfer consisted of carving a preference out of the bankrupt's property and transferring it to the defendant by means of a chattel mortgage. Thereafter the bankrupt sold the mortgaged property to a third person, subject to the mortgage, who valued the mortgage interest and delivered it to the defendant in notes, which were afterwards paid. *Held*:

(1) The notes were not the property obtained by the defendant, but were instruments by means of which the mortgage interest was transferred to the defendant's possession in the form of money.

(2) The transactions, to all intents and purposes, constituted a wrongful conversion of the property to the extent of the mortgage interest.

(3) Under the circumstances an action in trover was proper.

7. In such case the evidence, stated in the opinion, is *held* to charge the defendant with knowledge of the bankrupt's insolvency at the time of the execution of the chattel mortgage.

8. In such case the defendant is chargeable with notice of such facts as reasonable inquiry, in view of the circumstances with respect to the debtor's financial condition which were brought home to it, might fairly be expected to disclose.

9. In such case the facts and circumstances, stated in the opinion, are *held* sufficient to warrant the jury in finding that the mortgage was executed with intent to give the defendant a preference within the inhibition of the bankrupt act (ch. 541, 30 U. S. Stats. at Large).

10. If a creditor receives security for the payment of his claim, and that is followed within four months by the commencement of proceedings in bankruptcy against or on the part of the debtor, the intention of such security being to give the favored creditor a preference (the creditor having knowledge or reasonable means of knowledge thereof), and yet have the same standing as other creditors for the balance of his claim as he would have if the transfer were valid, the effect is necessarily to give such creditor a preference within the meaning of the bankrupt act (ch. 541, 30 U. S. Stats. at Large).

11. Where, in a prior action by a trustee in bankruptcy, the effort was to recover the value of property from a guilty agent, and, in the instant action by the trustee, the purpose was to recover the value of the same property from the guilty principal, both actions being commenced on the theory that the property in question was converted in fraud of the bankrupt act (ch. 541, 30 U. S. Stats. at Large), the prior action did not preclude the trustee from maintaining the subsequent action.

12. A judgment should not be disturbed on appeal where errors of computation do not substantially affect the result.

13. A trustee in bankruptcy, acting for creditors, in an action to recover preferences, is not entitled to recover for an amount paid by mistake to the bankrupt and by him turned over to the defendant, where the amount so paid was no part of the bankrupt's assets, since it did not thereby become a part of the trust property.

14. Laborers' liens on logs and lumber, under the statutes governing the same, are actual interests in the property to which they relate, subject to be defeated by failure to perform certain conditions subsequent made by statute necessary to the preservation and enforcement of the lien.

15. In an action to recover a preferential conversion of a bankrupt's property, money realized by the defendant in the enforcement of lien claims on logs and lumber constituting part of such property cannot be recovered by the trustee, since it is a mere realization by defendant of its interests in property paramount to the rights of plaintiff, and is not in violation of the bankrupt act (ch. 541, 30 U. S. Stats. at Large) governing unlawful preferences.

APPEALS from a judgment of the circuit court for Eau Claire county: JAMES O'NEILL, Circuit Judge. *Affirmed on both appeals.*

This action was brought by *Ralph W. Jackman,* trustee of the estate of John H. Young, to recover the value of property transferred as a preference under subd. *b,* sec. 60, Bankr. Act July 1, 1898, ch. 541, 30 Stats. at Large, 562 [U. S. Comp. St. 1901, p. 3445]. The complaint alleges, in effect, that on the 7th day of June, 1902, John H. Young, of Eau Claire, Wisconsin, filed a petition in bankruptcy and was adjudged to be a bankrupt, and on the 23d day of June, 1902, the plaintiff was elected and appointed by the creditors of said Young as trustee, and such appointment was duly approved; that the plaintiff duly qualified and entered upon his duties as such trustee and brings this action in such capacity; also alleges the corporate existence of defendant, the ownership by Young of logs, lumber, shingles, and lath worth the sum of $35,000, and other property not exceeding $500; that on February 10, 1902, Young was wholly insolvent; that the aggregate of his indebtedness was $40,000 and the value of his property $35,000; that on February 10, 1902, he was indebted to the defendant in the sum of $27,000 for money borrowed from time to time during a period of about two years prior to that date; that on February 10, 1902, he made two chattel mortgages to defendant, one for the sum of $15,000 and the other for the sum of $11,000, to secure the payment of said amounts then owing by him to defendant; that the property so transferred to defendant consisted of substantially all the property then owned by Young not by law exempt, which facts were well known to defendant, its officers and agents; that the effect of the enforcement and foreclosure of said mortgages would be to enable defendant to obtain a larger percentage of its debt than would other creditors of said Young, and that said mortgages were given for the purpose of hindering and delaying the other creditors of

said Young; that defendant, at the, time of the execution of
said mortgages, February 10, 1902, had reason to believe
that the same were given with the intention of giving defend-
ant a preference. The complaint further alleges the corpo-
rate existence of the Waters-Clark Lumber Company, and
that on the 10th day of March, 1902, at the special instance
and request of defendant, Young transferred by bills of sale
to said Waters-Clark Lumber Company, for the benefit of
defendant, all the property covered by said chattel mort-
gages, together with other property, which property was of
the value of $35,000; that said bills of sale were not ex-
ecuted as provided by ch. 80, Stats. 1898, and no bond was
given as required by sec. 1694, Stats. 1898; that, except as
to the agreement of said Waters-Clark Lumber Company to
pay said indebtedness, no consideration was paid by it for
said property, and nothing was paid to Young at the time
of the transfer; that immediately upon the execution of said
bills of sale said Waters-Clark Lumber Company, acting pur-
suant to direction of defendant, took possession of and sold
said property, applying the proceeds to the payment of de-
fendant's indebtedness secured by said mortgages, and that
defendant and its officers knew that the property so trans-
ferred constituted all the available assets of said Young, and
that such transfer and appropriation would result in the loss
by other creditors of all their indebtedness; that said Wa-
ters-Clark Lumber Company was in reality acting as the
trustee for defendant and with the understanding that it
would account to defendant for the proceeds of the property
transferred to the amount of its indebtedness, and that the
amount realized in excess of said indebtedness would be paid
to said Young. The complaint further alleges, among other
things, that by reason of the collusive arrangement and agree-
ment aforesaid and the chattel mortgages and bills of sale
the defendant appropriated to the payment of its indebtedness
substantially all the property of said Young, of the value of

$35,000, and that there is no other property in the possession of said trustee or belonging to said Young out of which the creditors of said Young can be paid, and that it is necessary, to enable plaintiff to pay anything to the other creditors, to recover from said defendant the value of the property so by it appropriated by means of said transfer. Plaintiff prays judgment for $35,000 and costs.

To this complaint defendant demurred for want of jurisdiction of the subject matter, that plaintiff had no legal capacity to sue, defect of parties plaintiff and defendant, and want of facts sufficient to constitute a cause of action. The court overruled the demurrer and defendant answered, admitting that on June 7, 1902, Young was adjudged a bankrupt, and on the 23d of June, 1902, plaintiff was appointed trustee and qualified as such, and that defendant during the times mentioned in the complaint was a banking corporation duly organized; that Young executed the chattel mortgages referred to in the complaint; that in March, 1902, Young sold to the Waters-Clark Lumber Company logs covered by one mortgage, and certain other logs, and that a portion of the proceeds was paid to defendant to discharge existing liens held against said property, and denying other material allegations of the complaint, and alleging that the mortgages were given for a valuable consideration, and were not made, given, or received for the purpose of giving defendant a preference; and further alleging that prior to the commencement of the action plaintiff commenced an action against the Waters-Clark Lumber Company to recover the purchase price of the logs and other material sold by said Young to said company, and thereby elected to look to and hold said company, instead of defendant, as liable to said trustee.

The action was tried before the court and a jury, and the following verdict returned by the jury:

"(1) Was the property of Young on February 20, 1902, when the chattel mortgages were executed, at a fair valua-

tion, sufficient in amount to pay his debts? *Answer.* No. (2) Was the property of Young on March 3, 1902, when the lumber was transferred, at a fair valuation, sufficient in amount to pay his debts? *A.* No. (3) Was the property of Young on March 29, 1902, when the logs were transferred, at a fair valuation, sufficient in amount to pay his debts? *A.* No. (4) Did the Waters-Clark Lumber Company, acting for the bank, and pursuant to an arrangement between the said lumber company and the bank, take the legal title to the lumber in question for the benefit of the defendant under an agreement with Young and the defendant to account to it for a portion of the proceeds? *A.* Yes. (5) Did the Waters-Clark Lumber Company, acting for the bank, and pursuant to an arrangement between said lumber company and the bank, take the legal title to the logs in question for the benefit of the bank under an agreement with Young and the defendant to account to it for a portion of the proceeds? *A.* Yes. (6) Was it the intention of Young, by the execution of the chattel mortgages to the bank, to give the bank a preference; that is, to enable the defendant to obtain a greater percentage of its debt than any other creditors of Young of the same class? *A.* Yes. (7) Was it the intention of Young, by the transfer of the lumber to the Waters-Clark Lumber Company, to give the bank a preference? *A.* Yes. (8) Was it the intention of Young, by the transfer of the logs to the Waters-Clark Lumber Company, to give the bank a preference? *A.* Yes. (9) Did the agents of the bank, acting therein when the chattel mortgages were executed to it, have reasonable cause to believe that Young intended thereby to give the bank a preference; that is, to enable the bank to obtain a greater percentage of its debt than any other of Young's creditors of the same class would be able to obtain? *A.* Yes. (10) Did the agents of the bank, acting therein when the lumber was transferred to the Waters-Clark Lumber Company, have reasonable cause to believe that Young intended thereby to give the bank a preference? *A.* Yes. (11) Did the agents of the bank, acting therein when the Cadott logs were transferred to the Waters-Clark Lumber Company, have reasonable cause to believe that Young intended thereby to give the bank a preference? *A.* Yes. (12) Did the officers or agents of the bank, acting therein when the upper logs were transferred to the Waters-

Clark Lumber Company, have reasonable cause to believe that Young intended thereby to give the bank a preference? *A.* Yes."

It was stipulated in open court that the following facts found by the court should be deemed and considered as part of the special verdict:

"(1) I find that the value of the lumber, lath, and shingles embraced in the chattel mortgages given by John H. Young to the defendant, and dated February 10, 1902, was something in excess of the sum of $3,452.85. (2) I find that the value of the lumber alone embraced in said mortgage, and which was subsequently transferred to the Waters-Clark Lumber Company on or about March 3, 1902, was $3,452.85. (3) I find that the value of the note given by Waters-Clark Lumber Company to Young, and by him turned over to the defendant for said lumber, was $3,452.85. (4) I find that the value of the so-called Cadott logs which were embraced in the chattel mortgage given by John H. Young to the defendant, and dated February 10, 1902, was $10,077.84. (5) I find that the value of the note given by Waters-Clark Lumber Company to Young, and by him transferred to the defendant on or about March 29, 1902, such note being a part of the purchase price named in the bill of sale for the logs belonging to said Young, was $2,508.14. (6) I find that the value of the so-called 'upriver logs,' which were transferred by bill of sale from Young to Waters-Clark Lumber Company on or about March 29, 1902, was $11,055.84."

It was also stipulated: That the amount of lienable claims due laborers on Cadott logs and lumber, paid out of the proceeds of the sale thereof, was $8,212.35. That the amount of lienable claims due laborers on upper logs, paid out of the proceeds of sale thereof, was $6,052.46. That the amount paid William McKinnon for balance due on purchase price of logs as per contract recorded in lumber inspector's office was $2,627.95. That the amount paid to other persons as purchase price of other upriver logs was $1,039.81. That the amount of lienable claims held by defendant on February 20, 1902, was $4,737.42. That the amount of lienable claims held by defendant on March 29, 1902, was $6,758.15.

That the amount of nonlienable claims held by defendant February 20, 1902, not including notes, was $700. That the amount of nonlienable claims held by defendant March 29, 1902, not including notes, was $1,106. That the total amount received by defendant on claims held by it February 20, 1902, not including what was paid on lienable labor orders, was $6,660.99, which was made up of the following items:

| | | |
|---|---:|---:|
| Note of Waters-Clark Lumber Company, given to pay purchase price of logs | $2,508 | 14 |
| Note of Waters-Clark Lumber Company, given as purchase price of lumber | 3,452 | 85 |
| Nonlienable time checks held by bank February 20, 1902... | 700 | 00 |
| | $6,660 | 99 |

It was further stipulated that all material questions of value of the property in question under the issues raised by the pleadings should be passed upon and decided by the court without being submitted to the jury, and the court's findings should be considered with the special verdict.

Motion was made by defendant for a directed verdict, to amend the verdict, and for judgment upon the verdict as so amended.

Plaintiff made several motions for judgment, as follows:

(1) The amount asked by the first motion, $23,986.53 and interest, was made up:

| | | |
|---|---:|---:|
| Value of Cadott logs | $10,077 | 84 |
| Value of upriver logs | 11,055 | 84 |
| Value of lumber transferred, exclusive of lath and shingles | 3,452 | 85 |
| | $24,586 | 53 |
| Less 60,000 feet of lumber sold, which Waters-Clark Lumber Co. did not get | 600 | 00 |
| | $23,986 | 53 |

(2) The amount asked by the second motion, $13,530.69 and interest, was made up:

| | | |
|---|---:|---:|
| Value of Cadott logs embraced in chattel mortgage to bank | $10,077 | 84 |
| Value of lumber embraced in chattel mortgage to bank.... | 3,452 | 85 |
| | $13,530 | 69 |

(3) The amount asked by the third motion, $13,825.14 and interest, was made up:

| | |
|---|---|
| Value of Waters-Clark Lumber Co. note, given as purchase price of lumber..................................... | $3,452 85 |
| Value of Waters-Clark Lumber Co. note, given as difference between purchase price of logs and amount of unpaid labor orders against them............................ | 2,508 14 |
| Amount of time orders, whether lienable or otherwise, held by bank March 29, 1902, which were paid by Waters-Clark Lumber Co. as part of purchase price of property. | 7,864 15 |
| | $13,825 14 |

(4) The amount asked by the fourth motion, $11,398.41 and interest, was made up:

| | |
|---|---|
| Value of Waters-Clark Lumber Co. note for lumber....... | $3,452 85 |
| Value of Waters-Clark Lumber Co. note for balance of proceeds of logs over and above labor claims.......... | 2,508 14 |
| Time checks, whether lienable or not, held by bank February 20, 1902, when mortgages were given.............. | 5,437 42 |
| | $11,398 41 |

(5) The amount asked by the fifth motion, $7,066.99 and interest, was made up:

| | |
|---|---|
| Lumber note........................................ | $3,452 85 |
| Log note proceeds.................................. | 2,508 14 |
| Nonlienable time checks held by bank March 29, 1902... | 1,106 00 |
| | $7,066 99 |

(6) The amount asked by the sixth motion, $6,660.99 and interest, was made up:

| | |
|---|---|
| Lumber note........................................ | $3,452 85 |
| Log note........................................... | 2,508 14 |
| Nonlienable time checks held by bank February 20, 1902. | 700 00 |
| | $6,660 99 |

The court denied each and every of the foregoing motions and ordered judgment for plaintiff for the sum of $6,254.99, with interest and costs. Judgment was entered accordingly, from which this appeal was taken.

For the plaintiff there was a brief by *Bundy & Wilcox,* and oral argument by *C. T. Bundy.*

For the defendant there were briefs by *Wickham & Farr,* and oral argument by *James Wickham.*

The following opinion was filed June 23, 1905:

KERWIN, J.   On defendant's appeal several errors are assigned, which, so far as deemed necessary, will be considered in their order.

1. It is claimed that the court erred in overruling defendant's demurrer to plaintiff's complaint, because no demand was alleged, and, further, that the complaint does not sufficiently allege the necessity of bringing the action.   Had the property covered by the chattel mortgages been in the possession of or under the control of defendant at the time action was brought by the trustee, so that it could have been surrendered upon demand, it would be necessary to consider and decide this question.   There is very respectable authority to the effect that no demand is necessary before action by a trustee to recover property transferred in fraud of the bankrupt act, upon the theory that, the whole transaction resulting in a preference being unlawful, no demand is necessary.   *Goldberg v. Harlan,* 33 Ind. App. 465, 67 N. E. 707; *Loveland, Bankruptcy,* 609; *Bull v. Houghton,* 65 Cal. 422, 4 Pac. 529. But in the case before us it appears from the allegations of the complaint that the mortgaged property had been converted before the commencement of the action and the proceeds applied upon the mortgage indebtedness of the defendant.   The defendant, by such conversion, put it out of its power to restore the property, and under such circumstances no demand was necessary.   *Dunham v. Converse,* 28 Wis. 306; *Crampton v. Valido M. Co.* 60 Vt. 291, 1 L. R. A. 120; *Shuman v. Fleckenstein,* 22 Fed. Cas. 54, No. 12,826.

Counsel for defendant further claims that the complaint is defective in not alleging that any creditor had filed a claim in the bankruptcy proceeding, or any fact showing that it was necessary to recover the alleged preference, and *Mueller v.*

*Bruss,* 112 Wis. 406, 88 N. W. 229, is cited in support of this contention.    It is sufficient answer to this proposition to say that such case deals only with the provision of the bankrupt act concerning the capacity of the trustee to avoid transfers of property in fraud of creditors, which, in the absence of the bankruptcy proceedings, such creditors might themselves avoid.    This action deals with an entirely different matter, under that part of the bankruptcy act relating to unlawful preferences, wherein it is provided that:

"If a bankrupt shall have given a preference within four months before the filing of a petition, or after the filing of the petition and before the adjudication, and the person receiving it, or to be benefited thereby, or his agent, acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee and he may recover the property or its value from such person."    Subd. *b,* sec. 60, Bankr. Act July 1, 1898, ch. 541, 30 Stats. at Large, 562 [U. S. Comp. St. 1901, p. 3445].

No condition precedent to the right of the trustee to recover such property is found in the statute, as will be seen, and obviously courts cannot legitimately ingraft any upon it.

2. Concerning the second assignment of error but little need be said.    The president of defendant was called for examination as an adverse party by plaintiff.    Objection was made by plaintiff to defendant's right to cross-examine this witness, as he was called by plaintiff for cross-examination as an adverse party, and the objection sustained.    We fail to see how defendant was prejudiced by this ruling.    It could have called and examined the witness, and he, being president of the bank, doubtless was not an unwilling or hostile witness. Therefore no reversible error was committed by the ruling.

3. Error is assigned upon the alleged ambiguity in and insufficiency of questions 4 and 5 of the special verdict, which deal with the subject as to whether the Waters-Clark Lumber Company, in acquiring title to the property in question, acted for the bank with the understanding that a portion of the pro-

ceeds of such property would be accounted for to defendant. Much that is said by counsel for plaintiff on this branch of the case is quite immaterial in view of the conclusion we have reached that the legal wrong for which defendant is liable goes back to the time the chattel mortgages were executed, and goes no further than the interest in the logs and lumber which in the form of money finally came to its possession. The only direct interest, as appears from the uncontroverted evidence, was represented by the chattel mortgages, certain lien claims acquired by purchase, and a small amount additional that will be referred to specifically hereafter, and which was, as appears, substantially charged to it in the accounting by which the total interest in the property for which defendant was liable was arrived at. We can hardly agree with the treatment by the learned circuit judge in his opinion of the verdict as to the questions under discussion. He expressed the view that such questions and the answers thereto do not find that the lumber company acted as agent for defendant in taking the title to the lumber. We find in the learned judge's opinion:

"It is not found that the lumber company was the agent of the defendant. If that were so, then it would result that the defendant really received the propery. The jury has found that the lumber company took title pursuant to an agreement between Young and the bank by which the lumber company was to account to the bank for a portion of the proceeds. The bank received the notes, and not the logs and lumber."

This part of the opinion of the learned circuit judge can hardly be reconciled with the language to which it refers, since it in effect sets the verdict aside as to the two questions and substitutes in place thereof, as a fact shown to exist by the undisputed evidence, that the lumber company, without any other relation to the bank than an understanding with it that its interest in the logs and lumber should be recognized and satisfied out of the proceeds of such property, purchased

the same.   When the jury decided that the lumber company
took title to the property acting for the defendant and for its
benefit, they pretty clearly decided that the latter was a prin-
cipal and the former a mere agent in the matter.   However,
the evidence seems to clearly establish that the lumber com-
pany purchased the property from Young in the regular
course of business, without any understanding with the de-
fendant other than that its interest in the property as mort-
gagee and claimant under numerous statutory labor liens
should be recognized and the equivalent thereof in money de-
livered to it out of the proceeds.   It were better if the court
had entirely omitted the two questions criticised, because the
matters covered by them were not in controversy on the evi-
dence, and had framed one appropriate to the case and di-
rected the proper answer, or left the matter to the jury, or
found the facts independently.   Having taken the answers
and come to the conclusion indicated by that part of the opin-
ion quoted, the better way certainly would have been to set
the answers aside, rather than to bend the questions into a
form which would harmonize with the supposed truth of the
matter.   We may say in passing that the idea which the court
voiced in the opinion that defendant did not receive any logs
or lumber, but received notes, so far as it suggests that de-
fendant did not receive the property, or any of it, for which
the recovery was sought, is hardly consistent with the rendi-
tion of the judgment which followed, since the very purpose
of the action was to recover the value of property, logs, and
lumber, not notes, wrongfully converted by defendant to its
own use.   If the reasoning of the learned court were sound,
the suggestion made by counsel for the defendant that the
action was brought on one theory and went to judgment on
another would not be wholly without merit.   The fact is, as
it seems, that the defendant did in legal effect receive into its
possession and convert to its use the property in question to
the extent of its chattel-mortgage interest.   The foregoing

renders it unnecessary to discuss further questions 4 and 5, or to consider complaints, made as to instructions given in respect thereto.

4. Error is assigned on the instruction to the effect that all the creditors belonged to one class. Whether that is right or wrong does not seem to in any way concern the case. This action, as we have indicated, is simply one in trover to recover the value of property which, as is alleged, was, in fraud of the bankrupt act, wrongfully converted by defendant to its own use. Whether there was one or more classes of creditors, and in what manner the property sought to be recovered would, if the suit were successful, be administered, did not vary in the slightest degree the legal rights of the plaintiff. If the property was obtained by the defendant in fraud of the bankrupt act, plaintiff was entitled to recover the same, and this is the only question involved.

5. Error is assigned because of the refusal to direct a verdict for defendant and in denying defendant's motion to correct the special verdict and for judgment in favor of defendant. A vigorous argument is made by counsel for defendant against the right of the trustee to maintain this action in the state court, relying mainly upon two Wisconsin cases. *Brigham v. Claflin,* 31 Wis. 607, and *Bromley v. Goodrich,* 40 Wis. 131. These cases were decided under the bankrupt act of 1867, which was quite different from the law under which the present case was brought; and it appears that one of the reasons given for denying the right of the state court to take jurisdiction was that the federal courts had exclusive jurisdiction in such cases, and that conflicts of interest might arise. Under the bankrupt act of 1898 the supreme court of the United States in *Bardes v. Hawarden Bank,* 178 U. S. 524, 20 Sup. Ct. 1000, held that the United States courts had no jurisdiction over suits similar to the one before us unless by consent of the proposed defendant; and that in the absence of express prohibition the state courts lose none of their juris-

diction to litigate questions arising between the trustee in bankruptcy and any adverse claimant concerning transfers of property claimed to be made in fraud of the bankrupt act. That even jurisdiction conferred upon the United States courts does not divest the state courts of jurisdiction in such cases. *Bardes v. Hawarden Bank, supra.* Under the above decision at the time this action was commenced the United States courts had no jurisdiction of the action, and unless it could be brought in the state court the plaintiff was without a remedy and the provisions of the bankrupt act practically nullified. It is therefore very clear that by the bankrupt act of 1898 the general jurisdiction of the state courts in independent actions between the trustee and adverse claimants was in no manner abridged, and this doctrine is recognized in subd. *b,* sec. 23, Bankr. Act. 1898, 30 Stats. at Large, 552 [U. S. Comp. St. 1901, p. 3431], which provides that "suits by the trustee shall only be brought or prosecuted in the courts where the bankrupt, whose estate is being administered by such trustee, might have brought or prosecuted them if proceedings in bankruptcy had not been instituted, unless by consent of the proposed defendant." This subdivision was amended in 1903 (Act Feb. 5, 1903, ch. 487, sec. 8, 32 Stats. at Large, 798 [U. S. Comp. St. Supp. 1903, p. 413]) by adding: "except suits for the recovery of property under section sixty, subdivision *b,* and section sixty-seven, subdivision *e."* So when this suit was brought it could not be maintained in the federal court without the consent of the defendant. *Bardes v. Hawarden Bank, supra; Perkins v. McCauley,* 98 Fed. 286. The bankrupt act of 1898 neither expressly nor by necessary implication having excluded the state court or given exclusive jurisdiction to the federal courts in suits by trustees to recover property transferred in fraud of the bankrupt act, the ordinary jurisdiction of the state court under the constitution and laws continued to exist. *French v. R. P. Smith & Sons Co.* 81 Minn. 341, 84 N. W.

44; *Chism v. Citizens' Bank,* 77 Miss. 599, 27 South. 637; *Bardes v. Hawarden Bank, supra.* And this doctrine is in harmony with the general theory in favor of concurrent jurisdiction under the constitution and laws. No, reason exists why a contestant with a bankrupt in such case should lose any of his rights by the bankruptcy of his adversary, and for obvious reasons it might be preferable for him to litigate in the state courts. Hence the provision of subd. *b,* sec. 23, Bankr. Act 1898, to the effect that suits by a trustee shall only be brought in the courts where the bankrupt might have brought and prosecuted them if proceedings in bankruptcy had not been instituted, unless by the consent of the proposed defendant. *Claflin v. Houseman,* 93 U. S. 130. It is well settled that, unless exclusive jurisdiction be given to the federal court, state courts have concurrent jurisdiction, subject to review by the supreme court of the United States, except in cases where by the constitution itself the power is given exclusively to the federal courts or prohibited to the state courts. *Martin v. Hunter's Lessee,* 1 Wheat. 304; *Houston v. Moore,* 5 Wheat. 1, 26; *Claflin v. Houseman, supra.* It is clear, therefore, as a general proposition, that at the time this action was commenced state courts had jurisdiction of such controversies. But it is claimed on the part of the defendant that the action cannot be maintained without overruling *Brigham v. Claflin,* 31 Wis. 607, and *Bromley v. Goodrich,* 40 Wis. 131. It will be observed, however, that these cases were decided under the bankrupt act of 1867, and it was held under this act that the federal and state courts had concurrent jurisdiction, and hence the bankruptcy statute was not nullified by refusal on the part of the state courts to take jurisdiction. Besides, these Wisconsin decisions were put upon the ground that, the action being penal, and arising under the federal statute providing a federal forum for redress, state courts should not interfere to enforce a penalty under a federal statute. And further, that conflicts might arise between the state

and federal courts, and, this being so, and the statute a penal one, and the United States courts having jurisdiction, grave consequences were anticipated in the assumption of jurisdiction by the state courts. In *Brigham v. Claflin, supra,* at page 613, this court says:

"In the first place, it must be obvious that the assertion of a state jurisdiction in such causes will greatly tend to protract and multiply suits in respect to the bankrupt's estate, and will inevitably be a most fruitful source of conflict and collision between the state and federal tribunals. The object and policy of the bankrupt law manifestly are to collect and distribute the property of the bankrupt among his creditors as promptly as practicable; and these ends can be much more readily accomplished by the United States courts—which have plenary jurisdiction in these matters—than by tribunals acting by different modes, and deriving their powers from other sources."

No such consequences could result from the bankrupt act of 1898. On the contrary, the contention of counsel for defendant would put the trustee in the anomalous position of being unable to administer his trust because no court was open to him. The bankrupt act of 1898 clearly contemplates that suits similar to the one before us may be brought in state courts, and cannot in the United States courts. This court has declined to follow the doctrine of *Brigham v. Claflin,* 31 Wis. 607, and has, in effect, held that actions like the instant case may be maintained in the state courts. *Binder v. Mc-Donald,* 106 Wis. 332, 82 N. W. 156; *Mueller v. Bruss,* 112 Wis. 406, 88 N. W. 229. State courts therefore should take jurisdiction, and the action was properly brought. *Claflin v. Houseman,* 93 U. S. 130; *Mueller v. Bruss, supra; Bardes v. Hawarden Bank,* 178 U. S. 524, 20 Sup. Ct. 1000; *Lyon v. Clark,* 124 Mich. 100, 82 N. W. 1058, 83 N. W. 694; *French v. R. P. Smith & Sons Co.* 81 Minn. 341, 84 N. W. 44; *Perkins v. McCauley,* 98 Fed. 286; *Huntington v. Attrill,* 146 U. S. 657, 13 Sup. Ct. 224; *Whitman v. Oxford*

*Nat. Bank,* 176 U. S. 559, 567, 20 Sup. Ct. 477; *Chism v. Citizens' Bank,* 77 Miss. 599, 27 South. 637.

It is further claimed by counsel for defendant that the property for the value of which this suit was brought had never been sold or received by the defendant, and therefore the action cannot be maintained; that the defendant received notes, not property. It was established on the trial, without any room for reasonable controversy, that what the bank got was its mortgage interest, obtained in fraud of the bankrupt act, and its interest by reason of certain lien claims, and a small amount in addition, as we have before indicated. The notes were but mere instruments by means of which its interest in the property was transferred to its possession in the form of money. To all intents and purposes it received the logs and lumber to the extent of its interest therein as effectually as any chattel mortgagee obtains his interest in the subject covered thereby when a purchaser thereof subject to the mortgage values the mortgage interest and delivers it to the mortgagee in money. The act of carving out an interest in the property and transferring it by means of the mortgage, and the enforcement thereof in fraud of the bankrupt act, was, to all intents and purposes, a wrongful conversion of the property to that extent. The complaint was in trover, which was proper under the circumstances. The difficulty at several points in this case is in the fact before mentioned that the mere instrument by means of which an interest in the property was transferred to defendant has been treated as the property defendant obtained.

It is further claimed by defendant that there is no evidence sufficient to support the finding that defendant had reasonable cause to believe that Young intended by the sale to enable the bank to obtain a greater percentage of its debt than other creditors of the same class would be able to obtain, and we are earnestly asked by counsel to carefully consider the evidence upon this subject. Quite a lengthy argument is

made by counsel to the effect that the enforcement of the mortgage indebtedness would not enable defendant to obtain a greater percentage of its debt than any other creditor of the same class; hence there was no preference. There is abundance of evidence to the effect that Young was insolvent at the time of execution of the mortgages, and that the agents of defendant, when the mortgages were executed, had reasonable cause to believe that Young intended to give defendant a preference. It would serve no useful purpose to go into a lengthy discussion of the evidence upon this proposition. Young was hopelessly insolvent when the mortgages were executed. He in effect told the officers of the bank, when requested to make the mortgages, that he did not have sufficient property to pay all his creditors. He did all his banking business with defendant. He was not a man of large means or large business interests. Defendant had examined into his affairs, and knew, or ought to have known, his financial condition. His indebtedness to the bank during a period of about two years prior to the execution of the mortgages had increased from $2,000 to $27,000, while during the same time there is evidence to the effect that his assets decreased. The officers of the bank were urging payment for a year before the mortgages were given, claiming the loan was too large. It appears that a day or so after Young's mill burned an officer of the bank requested him to execute chattel mortgages, and presented them to him prepared; that he refused, saying it would not be fair to do that and leave all the rest of his creditors, as he did not have enough to pay all he owed; and the officer of defendant said he ought not to go back on the bank, that it had used him well, and he ought to give it a mortgage. At this time he refused to execute the mortgages, but did about a week later. Young testified that he intended to give defendant a preference. It is true he made statements to the bank showing his assets much larger than they really were, but, in view of the large indebtedness

to the bank and its familiarity with his business, together
with the fact that he was meeting practically all his obliga-
tions with fresh promises to pay, and constantly increasing
his indebtedness, the defendant must be charged with knowl-
edge of his insolvency at the time of the execution of the
mortgages. But it is useless to pursue the investigation. It
is sufficient to say that we are convinced from a careful ex-
amination of the evidence that it supports the verdict, and
upon well-established principles such finding cannot be dis-
turbed. Whether defendant had reasonable cause to believe
that Young was insolvent within the meaning of the bank-
rupt act was a question of fact, and it was chargeable with
notice of such fact as reasonable inquiry in view of the cir-
cumstances with respect to the debtor's condition, which were
brought home to it, might fairly be expected to disclose. So
the facts and circumstances in this case were sufficient to war-
rant the jury in finding that the mortgages were executed
with intent of giving defendant a preference. *In re Eggert,*
102 Fed. 735, 43 C. C. A. 1; *Hackney v. Raymond Bros.
Clarke Co.* (Neb.) 94 N. W. 822; *Giddings v. Dodd,* 10 Fed.
Cas. 338, No. 5,405.

It is claimed, however, by counsel for defendant that, un-
less the enforcement of the mortgages would operate to give
defendant a greater percentage of its debt than other credit-
ors of the same class would receive, the mortgages did not
amount to a conveyance of property—or, in other words, a
preference—within the meaning of the bankrupt act. We do
not so understand the law. The federal statute renders void
any preference given under the circumstances specified there-
in, and, as we have seen, gives the trustee in bankruptcy the
right to recover any property, or its value, conveyed in viola-
tion of such act. Manifestly, if a creditor receives security
for the payment of his claim, and that is followed within
four months by the commencement of proceedings in bank-
ruptcy against or on the part of the debtor, the intention of

such security being to give the favored creditor a preference (he having knowledge or reasonable means of knowledge thereof), and yet have the same standing as other creditors for the balance of his claim as he would have if the transaction were valid, the effect would necessarily be to give such creditor an undue advantage—a preference, within the meaning of the bankrupt act. That is too clear to admit of reasonable controversy. *Toof v. Martin,* 13 Wall. 40.

The further point is made that prior to the commencement of this action plaintiff ratified the sale by Young to the Waters-Clark Lumber Company, which, by this action, it is sought to avoid, in that July 7, 1902, he began an action against such company on the theory that there was such a sale; that the property was of the value of $35,000; that the company agreed to pay certain liens on the property, and that, after taking account thereof, there was a balance due Young; that the action was grounded on implied contract, and precluded subsequent action sounding in tort to recover the subject of the sale. True, one cannot pursue inconsistent remedies to obtain redress for a single wrong. He cannot bring replevin or trover upon the theory that the property involved is his, and subsequently sue upon contract as if the title to the property had passed from him or beyond his reach. *Fuller-Warren Co. v. Harter,* 110 Wis. 80, 85 N. W. 698; *Smeesters v. Schroeder,* 123 Wis. 116, 101 N. W. 363; *Rowell v. Smith,* 123 Wis. 510, 102 N. W. 1. But we fail to see how this doctrine applies here. Counsel for defendant seems to have misconceived the character of the action commenced by plaintiff against the Waters-Clark Lumber Company. As we read the complaint, a copy of which is found in the record, the cause of action set forth therein is similar to the one here. It is in trover to recover the value of property wrongfully converted. The lumber company is there charged with having, as agent for the defendant here, in fraud of the bankrupt law, obtained possession of the prop-

erty in question by purchasing the same of Young. This action charges the same thing. While before the effort was to recover the value of the property of a guilty agent, here the purpose was to recover the value of the property of the guilty principal. Both actions were commenced upon the theory that the property in question was, in fraud of the bankrupt law, converted by the lumber company and the defendant, the former acting as agent of the latter.

6. It is further assigned as error that the judgment is excessive. The court fixed the amount by taking the aggregate of the two notes and the $700 paid for nonlien time checks held by the bank, aggregating $6,660.99, and deducting therefrom $406, amount of nonlien time checks taken by defendant between February 20th and March 29th, leaving the balance of $6,254.99, for which amount, with interest and costs, judgment was rendered. Counsel for defendant concedes that the $406 should not have been deducted, but contends that, because there was included, in one of the notes making up the aggregate of $6,660.99, $413 overpayment on the purchase price of the logs by the Waters-Clark Lumber Company, the difference between the $413 and $406 makes the judgment to that extent excessive in the sum of $7. But there is evidence that the amount of this so-called overpayment on purchase price was in fact only $377.05. It is quite clear from the record that the $406 should not have been deducted from the $700, amount of nonlien time checks held by defendant February 20, 1902, but should have been deducted from $1,106, the amount of nonlien time checks held by defendant March 29, 1902. The amount of the overpayment on purchase price of logs, however, should have been deducted, and hence the errors do not substantially affect the judgment. It is claimed by counsel for plaintiff that, even though the lumber company paid $413, or any amount, more than the purchase price of the logs by mistake or otherwise, and that the amount was included in the judgment, it cannot be considered. This

position is not tenable. If an amount was included in the judgment which should not have been, sufficient substantially to offset the $406 which was improperly deducted from the judgment, substantial justice was done between the parties in that regard and the judgment should not be disturbed. The trustee acting for the creditors was not entitled to judgment for any amount paid by mistake by the lumber company to Young and turned over by Young to the defendant. It was no part of Young's assets and therefore did not become any part of the trust property.

Some other points presented in the brief of counsel for defendant do not strike us as being sufficiently significant to warrant consideration in this opinion, though it should be said that all points presented by counsel have, as it is believed, been fully considered by the court. The amount of the judgment, as we view the matter, is substantially the equivalent of the property which defendant secured by its mortgages. That is all the property, as appears from the record, which it obtained in fraud of the bankrupt act.

Motions for judgment on the verdict were made in plaintiff's behalf, the amounts claimed ranging from upwards of $24,000 down to $6,660.99. On his appeal he complains of the denial of such motions and seeks to obtain an increase in the judgment awarded. What has been said seems to effectually dispose of all questions presented in that regard. The money paid to defendant on the lien claims was for actual interests in the property paramount to the rights of the plaintiff. We use the term "lien claims" in preference to the term "lienable claims." Under our statute, as construed by this court, such claims are actual interests in the property to which they relate, subject to be defeated by failure to perform certain conditions subsequent made by statute necessary to the preservation and enforcement of the lien. The term "lienable claim" suggests mere right to obtain an interest in specific property instead of an interest *in præsenti* therein.

The latter is the character of a laborer's lien on logs and lumber under our statute. His interest in the property he acquired by performance of the labor. *Smith v. Shell Lake L. Co.* 68 Wis. 89, 31 N. W. 694; *Viles v. Green,* 91 Wis. 217, 64 N. W. 856. Manifestly, a mere realization in money by defendant of its interest in property, which was perfectly valid, was not a violation of the bankrupt act as to unlawful preferences. The only interest, as we have seen, in the property in question, which was acquired by the defendant in violation of such act, was the mortgage interest, and that interest in money value was embodied in the judgment.

*By the Court.*—The judgment is affirmed on both appeals.

Both parties moved for a rehearing.

The motions were denied October 3, 1905.