COLEMAN v. DECATUR EGG CASE CO.

(Circuit Court of Appeals, Eighth Circuit. March 14, 1911.)

No. 3,456.

1. BANKRUPTCY (§ 160*)—VOIDABLE "PREFERENCE"—INSOLVENCY.
    Where a debtor, at the time it delivered a part of its stock in trade to a creditor, within four months of the filing of a petition in bankruptcy against it, had left stock in trade worth about $2,500, and owned notes and open accounts worth about $1,300, and owed about $40,000, it was insolvent, and the transfer operated to give the creditor a voidable "preference," within Bankr. Act July 1, 1898, c. 541, § 60, cls. "a," "b," 30 Stat. 562 (U. S. Comp. St. 1901, p. 3445).
    [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 160.*
    For other definitions, see Words and Phrases, vol. 6, pp. 5498, 5499; vol. 8, p. 7759.]

2. BANKRUPTCY (§ 304*)—VOIDABLE PREFERENCE—KNOWLEDGE OF CREDITOR—QUESTION FOR JURY.
    Where an insolvent debtor, within four months of the filing of a petition in bankruptcy against it, transferred the bulk of its stock in trade to a creditor, who had demanded payment, and who at the time of the transfer admitted that he had his suspicions as to the solvency of the debtor, and who saw the debtor's stock and knew that the transfer would cripple it for continued business, and who made no inquiries touching the debts or assets of the debtor, the issue whether the creditor had reasonable cause to believe that the debtor intended to give a preference, within Bankr. Act July 1, 1898, c. 541, § 60, cls. "a," "b," 30 Stat. 562 (U. S. Comp. St. 1901, p. 3445), must be submitted to the jury.
    [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 304.*]

In Error to the District Court of the United States for the Southeastern Division of the District of Missouri.

Action by Frank B. Coleman, trustee of the estate of the H. N. Saylor Cooperage Company, bankrupt, against the Decatur Egg Case Company. There was a judgment for defendant, and plaintiff brings error. Reversed and remanded.

Lee W. Grant, for plaintiff in error.

R. B. Oliver, Jr. (J. H. Bradley, R. B. Oliver, and Allen L. Oliver, on the brief), for defendant in error.

Before SANBORN and ADAMS, Circuit Judges, and WILLIAM H. MUNGER, District Judge.

ADAMS, Circuit Judge. This was a suit by a trustee in bankruptcy to recover a preference claimed to have been given to a creditor of the bankrupt within four months next preceding the filing of the petition for an adjudication against it. The preference is said to have consisted in the transfer to the defendant, the Egg Case Company, of a lot of staves and other cooperage material taken out of the stock in trade of the bankrupt in partial settlement of an indebtedness due the defendant. The cause was tried to a jury, and at the close of all the evidence a verdict was directed in favor of the defendant. From the judgment entered on that verdict, the trustee prosecutes error.

To constitute a voidable preference within the meaning of section 60, cls. "a" and "b," of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]), the debtor at the time of making the transfer must have been insolvent, and the receipt of the property transferred must have had the effect of enabling the favored creditor to obtain a greater percentage of his debt than any other creditor of the same class. In addition to these things, the creditor must have, at the time of the transfer, had reasonable cause to believe that it was intended thereby to give him a preference.

[1] The proof discloses that the property transferred was worth about $7,000; that the remaining stock in trade of the bankrupt was estimated to be worth about $2,500, but was sold by the trustee for about $1,700. There were some notes and open accounts belonging to the bankrupt, which realized about $1,300. At the time of the transfer the debtor owed about $40,000. He was, therefore, hopelessly insolvent, and the preference necessarily operated to give the Egg Case Company a greater percentage of its debt than any other creditor of the same class could get. The only question left is whether the defendant, at the time of receiving the transfer, had reasonable cause to believe a preference was intended to be given him.

A general reference to the testimony is all the demands of the case require. The debtor owed to the Egg Case Company, at the time of the transfer, about $13,000. This was represented by drafts or acceptances, some of which were overdue and protested. Upon the receipt of the stock the Egg Case Company credited the amount of its invoice value upon the acceptances, some of which were due, and some of which were not due. Mr. Vail, president of the Egg Case Company, had been urgently demanding payment of its debt for some time. On the 16th day of December, 1908, he wrote the following letter to the Cooperage Company:

" * * * Now, Sayler, we have got to have some money. I can't stand my men and bills off any longer. * * * Now, do something. I am down here, where I can't do anything. Our men here are poor, and can't help me with the case. Of course, I know how you are and feel about the situation, but yet your condition is nothing compared to these poor devils in here that have nothing. Do something."

This letter was followed by a personal visit of Vail to the debtor's place of business in St. Louis on the 21st day of December. He gives an account in his testimony of that visit. He says:

"I bought the stock of goods of Mr. Sayler on the 21st of December. I came into St. Louis on the 21st of December. After I had gotten my breakfast, I went down and met Mr. Sayler, and gave him the usual morning greeting, and I asked him for money, that my bills were pressing me, and he said, 'Sales are not so good, and I can't give you anything.' Then I looked around and says: 'If your sales are bad, and your collections are bad, and you can't help me out, I have got to have relief some way; sell me some of the stock here.' He says: 'All right. No harm in selling you stock.' So I went into the warehouse and bought this bunch and that bunch of cooperage stock, and after we had agreed on the price, then he had some stock he claimed was mine, that had been refused, and I took that in."

The proof shows that on this occasion Vail made no inquiries touching the debts or the assets of the debtor. The whole transaction consumed but a few moments. He saw the stock, and necessarily knew what he proposed to take would deprive his debtor of the great bulk of its stock in trade, and would cripple it for continued business. He said on his examination that he did not know anything that would lead him to believe that his debtor was then insolvent, but he admits that he had suspicions.

The foregoing, with other testimony of like character, presents a fair view of the condition of things that surrounded the parties at the time the defendant received the transfer in question. This court, speaking by Judge Hook, in Pittsburgh Plate Glass Co. v. Edwards, 78 C. C. A. 191, 148 Fed. 377, said as follows:

"The bankrupt was hopelessly insolvent. That he intended a preference is inferred as a necessary consequence of his act in giving the mortgage [which in that case constituted the challenged transfer] while in such financial condition, and an examination of the record impresses us with the belief that the appellant's attorney was so well satisfied of the bankrupt's insolvency, and its effect upon the mortgage he was about to take, that he purposely traveled as close to the edge of actual knowledge as he could without obtaining it. * * * He ignored other sources of information, which were at hand, and were so obvious and so much more accurate and reliable that, in view of the undisputed facts of the case, intentional avoidance is suggested."

[2] It is not necessary in this case to find the debtor had reasonable cause to believe a preference was intended. Our inquiry is whether there was any evidence from which a jury might reasonably make that finding. We think the facts of the case, not only those which we have referred to, but others of like character, together with the inferences reasonably to be drawn from them, were sufficient to take the case to the jury. It was an unusual transaction for a creditor to require payment of his merchandise debts out of stock in trade of the debtor, and especially so to go to the extent of taking nearly all of it. The record also seems to disclose a purpose to avoid securing information touch-

ing the financial condition of the debtor. Sources of true information concerning it were available to the defendant at the time its president took the stock. The books were there. The debtor, who was familiar with his business, was there. But neither the books were asked for, nor was any question put to the debtor concerning its assets or liabilities. The creditor knew, or must have known, that by taking practically all his stock in trade he was taking away from his debtor the means of prosecuting his business. McElvain v. Hardesty, 94 C. C. A. 399, 169 Fed. 31.

There is a suggestion that part of the stock which the creditor took was some that had not been accepted by the debtor, and therefore that the title never passed to the latter. It is unnecessary to pass on this question now, as the case must be retried, and this issue, amongst others, can then be determined.

The judgment is reversed, and the cause remanded for a new trial.