B. F. Wickwire, Trustee for Charles F. W. Buente,
Appellee, v. Webster City Savings Bank, Appellant.

**Bankruptcy:** preferences: payment by another. Where an alleged
insolvent gave a chattel mortgage to secure a debt and after-
wards sold the mortgaged property subject to the mortgage,
the fact that the purchaser instead of the insolvent paid the
mortgage, was immaterial on the question of whether the pay-
ment constituted a preference.

**Same:** intent: instruction. Where the question of intent with
which a particular act was done is involved, whether arising in
a criminal or civil action, an instruction defining intent is proper:
As where the question is whether an insolvent intended to create
a preference by securing one of his creditors.

**Same:** instructions: definition of words. Definition of the word
"preference" as used in an instruction regarding preference of
creditors in bankruptcy is not required, in the absence of a re-
quest therefor.

**Bankruptcy:** preferences: intent of parties: evidence. The ver-
dict of a jury in a cause properly tried and submitted will not
be set aside if there is any substantial evidence in its support.
In this action by a trustee in bankruptcy to recover a claimed
preference the evidence is held sufficient to require submission
of the issue and to support a finding of insolvency at the time
the bankrupt executed a mortgage alleged to constitute the pref-
erence; that he intended thereby to give a preference, and that
the mortgagee intended to secure his claim to the exclusion of
other creditors.

*Appeal from Hamilton District Court—*Hon. R. M.
Wright, Judge,

Wednesday, November 15, 1911.

Action at law to recover an amount paid to the de-
fendant by Chas. F. W. Buente, an alleged bankrupt,

upon a chattel mortgage indebtedness of the said Buente, which chattel mortgage is said to have been received by defendant as a preference under the national bankruptcy law, and therefore void. Trial to a jury, verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*Boeye & Henderson,* for appellant.

*Wesley Martin* and *G. D. Thompson,* for appellee.

DEEMER, J.—Chas. F. W. Buente was engaged in the general merchandising business at Webster City, Iowa, for five or six years prior to August 6, 1908. During the latter part of this time, he did his banking business with the defendant. Something over a year before the transaction hereafter referred to, he borrowed of defendant $400, and gave his note therefor. This note was due in ninety days, and was renewed five or more times for ninety-day periods until May 6, 1908, when the last note in the series was executed. This note was for $400, and matured August 6, 1908. On July 31, 1908, Buente gave his wife a bill of sale covering his entire stock of goods for an expressed consideration of $1,000. It is claimed that this bill of sale was in fact a mortgage to secure an indebtedness due the wife. This bill of sale was filed for record on the day of its execution. Learning of this bill of sale, the officers of the defendant went to Buente and demanded security for its note, and on August 1 he (Buente) and his wife executed a chattel mortgage to the bank, covering the entire stock of goods, to secure the $400 note. This mortgage was filed for record on the day of its execution. On August 6, 1908, Buente traded his stock of goods to one Whitham for some Wisconsin land, and executed a bill of sale to Whitham for the goods, which bill of sale was subject to the bank's mortgage. As a matter of fact, Whitham, as part consideration for the exchange, undertook to pay

the bank's mortgage, and he in fact paid the indebtedness secured thereby on the day the trade was finally consummated, to wit August 6, 1908. The bank official who took the mortgage from Buente died before this case was reached for trial, and his testimony was not taken. On September 8, 1908, the creditors of Buente filed a petition, alleging that he was a bankrupt, and asked that he be so adjudged. To this Buente appeared and consented to an order so finding, and in October of the same year he was duly adjudged a bankrupt. This action was brought by the trustee in bankruptcy to secure judgment for the amount paid the defendant by Whitham, on the theory that· Buente had made the defendant a preferential creditor within four months immediately preceding the adjudication of bankruptcy, and that the amount received by the defendant should be returned to the trustee. The case was tried to a jury upon issues duly joined, resulting in a verdict for plaintiff. Judgment was rendered thereon, and the appeal is from this judgment.

1.   Several of the instructions are challenged, and error is predicated upon the ruling denying defendant's motion for a new trial, which challenges the sufficiency of the testimony to support the verdict. The theory on which the case was tried can best be stated by quoting a few of the instructions. These are as follows:

(3)   Under the issues thus joined, the burden of proof is on the plaintiff to prove by a preponderance of· the evidence each of the following propositions: First. That at the time of the making of the mortgage to the defendant, and the payment of the $400 to the defendant, said C. W. F. Buente was insolvent. Second. That after the making of the said mortgage and the payment of the said $400, and within four months thereafter, a petition in bankruptcy was filed against the said C. W. F. Buente. Third. That since the filing of the said petition the said Buente has been adjudged a bankrupt, and that there are outstanding creditors of his whose claims have been al-

lowed, but are still unpaid. Fourth. That, at the time of the making of the said mortgage and the payment of the said $400, the said Buente intended to give to the defendant a preference over his other creditors, and that the said defendant at said time knew, or had reasonable cause to believe, that said Buente was in fact insolvent, and intended a preference.

(4)    In the bankruptcy act, it is provided that if a bankrupt shall have given a preference within four months before the filing of the petition, or after the filing of the petition, and before the adjudication, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person.

By reference to the above and foregoing language in this instruction contained, you will see that one of the important things for you to decide in this case is this: Whether the defendant bank knew or had reasonable cause to believe that the said Buente was insolvent, and that it was intended by him in giving the said mortgage to it (the said bank), and in causing the payment to it of the $400, to give to the said bank a preference over his other creditors. It is not sufficient for the plaintiff to prove that the defendant bank had reasonable cause to suspect that Buente was insolvent and was preferring it over his other creditors; it (the said bank) must either have known, or have had reasonable cause to believe, that Buente was insolvent, and that it was receiving from him a preference over his other creditors. In still other words, it would not be enough for the bank to have had some reason to suspect the insolvency of the said Buente, but it must have had such a knowledge of the facts as to induce in it a reasonable belief of Buente's insolvency, in order to invalidate the mortgage taken by it to secure his debt to it (the said bank).

(5)    In the course of these instructions, the term 'insolvency' has been several times used. Now, a person is said to be insolvent within the meaning of the law, in such cases as the one now before you, when the fair, rea-

sonable, market value of his property which is not exempt
from execution is less than the amount of his indebtedness.

(7)   If, at the time the defendant took from Buente
said mortgage, it either knew of the insolvency of the said
Buente, if he was insolvent, or had reasonable cause to
believe that he was insolvent, and that he intended to give
the defendant a preference over other creditors, the de-
fendant can not now insist on such preference as against
the plaintiff in this suit.

None of these are challenged, save it is insisted that
there is no testimony in the record to show that Buente
was insolvent when he made the mortgage to the bank.
They must therefore be treated as the law of the case.

The instructions complained of are six and seven and
one-half, which read as follows:

(6)   If you find from the evidence that at the time
the bill of sale was made by Buente to Whitham the same
was made subject to the $400 mortgage, and that it was
the intention of Buente and Whitham that said mortgage
should be paid by Whitham as a part of the consideration
for which the said bill of sale was made, and you fur-
ther find that payment of the said $400 was in fact made
in pursuance of the said intention, said payment, though
made by Whitham will have the same legal effect as if it
has been paid personally by Buente.

(7½)   In the course of these instructions, the words
'intended' and 'intention' have been several times used.
Now, the intent with which an act is done, being the pur-
pose or formulated design in the mind at the time the act
is being done, is often incapable of direct proof; but
its existence or nonexistence may frequently be ascertained
by the jury from just and reasonable inference from all
the facts proved.   Thus you are instructed that you have
in law a right to infer that a man intends to do that
which he voluntarily does do, and that he intends all the
natural, direct, and probable consequences of his own acts.
Thus, in the case before you, if Buente, at the time of
the making of the mortgage, was insolvent, and knew that
he was insolvent, and nevertheless executed a mortgage
to the bank, which act necessarily operated in giving a

preference to the said bank, you would have a right to infer that he intended by giving the said mortgage to give said bank a preference.

Counsel say, with reference to the sixth, that they can find no authorities which condemn such an instruction, but that on principle it must be erroneous, for the reason that the payment to defendant was not made by Buente, but by Whitham, and therefore there should not be any recovery from defendant. We are not disposed to adopt this line of reasoning. The debt was Buente's, and, although Whitham actually paid the money to the bank, it was Buente's debt, and he at all times was the principal in the transaction. The money came into defendant's hands from Whitham by reason of the Buente chattel mortgage, and this mortgage is charged to be invalid because preferential in character. But for the mortgage defendant would not have received the money, and the payment was in fact made for Buente, to satisfy the note which the mortgage was made to secure. Defendant received the money as in payment of the note, and surrendered the same to Whitham. The payment was in fact made for Buente, and the mere fact that Whitham actually turned over the money is not controlling. The instruction seems to be correct.

1. BANKRUPTCY: preferences: payment by another.

Number seven and one-half, also complained of, undoubtedly announces elementary propositions of law. The chief point made in argument is that such an instruction has no place in civil procedure, and is applicable only to criminal cases, where intent, motive, and purpose are involved. As we view it, the instruction announces a general rule of law, applicable to any case where motive, purpose, and intent are involved, no matter whether the action be criminal or civil in character. One of the issues in the case was whether or not Buente intended to give defendant a preference. In order to determine that issue, his acts and conduct, as well as

2. SAME: intent: instruction.

his declarations, of necessity, had to be considered, for these are the things indicative of intent, which, after all, is a state of mind that can only be shown by what one says and does. Logically and according to the rules of law, it follows as a general proposition that intent is to be inferred from what one does, and the presumption obtains that one intends all the consequences which directly and naturally flow from what he does. The instruction is correct, and it found proper place in the charge as given.

Complaint is made because the court used the word "preference" in its instructions, without defining the term in any part of the charge. In this there was no error.

3. SAME: instructions: definition of words.

Defendant asked no instruction upon the subject, and definition of the term was not required, in the absence of a request. The instructions as a whole fairly covered the issues, and we see no error.

II. The chief complaint of counsel is that there is no testimony tending to show Buente's insolvency when he made the mortgage, no testimony that any of defendant's

4. BANKRUPTCY: preferences: intent of parties: evidence.

officers knew of such insolvent condition, even if it existed, and no evidence showing or tending to show that they, or any of them, had reason to believe that Buente was insolvent, or was intending to give them a preference. The case was tried to a jury, and if there be any substantial testimony in support of these various issues we are not justified in interfering, no matter what our conclusions might be, were we to settle the facts. As will be observed from the instructions already quoted, the court defined insolvency, and as this definition is not complained of we shall assume it to be correct.

The inquiry then is this: Is there any substantial testimony showing or tending to show that Buente's assets, at a fair and reasonable valuation, were at the time the mortgage was made less than his outstanding indebtedness?

Without setting forth the testimony *in extenso,* it is enough to say that a jury was justified in finding therefrom that Buente's liabilities were in excess of his assets, even if we treat the bill of sale to 'the wife as a mortgage, and not an absolute sale. There is a conflict in the testimony upon this proposition, but such conflict, even though to our minds it be such that a preponderance of the testimony favors defendant's contention, is not enough to justify us in setting aside the verdict. According to the testimony, Buente, at the time of the giving of the mortgage, was indebted to an amount exceeding $3,600, and a jury may have found that his assets did not amount to more than $2,700 or $2,800. Moreover, he was found insolvent within sixty days from the time he made the mortgage, and his creditors commenced action to have him declared a bankrupt within thirty-eight days after the mortgage was executed. Again, his deposits with the defendant bank had fallen off to a noticeable extent before the bank took its mortgage, and his creditors were then pressing him. For some reason, he gave a bill of sale to his wife, covering his entire stock, as he now says, as security to his wife. Even if that were the purpose, the fact that such a conveyance was made is indicative of a feeling on his part that he was so much involved that to protect his wife it was necessary to give her security, else she might lose her claim. Furthermore, the trade to Whitham was peculiar. Buente never saw Whitham's Wisconsin land, and no invoice of Buente's stock of goods was taken. Buente made no inquiry as to the value of the land, and Whitham had no reliable information as to the stock. The trade was made on the very day it was suggested, and without the usual investigations. Other creditors were pressing Buente for payment close to the time the mortgage was made, and one of these was satisfied by the defendant bank; another was offered forty cents on the dollar by Buente. Surely there was enough upon this proposition to carry the

case to a jury.  Upon the question of defendant's officers'
and agents' knowledge of Buente's insolvency when they
took the mortgage, the case is not perhaps so clear.  As
already stated, the official who actually took the mortgage
is dead, and we do not have his testimony.  It is shown,
however, that the bank officials noticed a marked falling
off of Buente's deposits during the months of June and
July of the year 1908; that he had overdrawn his ac-
count in the bank; that his account was unsatisfactory;
and that the officials were worried over the situation.  The
making of the bill of sale was known to the bank, and
the next morning one of the officials went to Buente with
a demand for security of the bank note.  It was suggested
that the making of this bill of sale would stimulate all
Buente's creditors into activity.  Buente testified that the
bank had been kind to him, and that he told the official
who came for security that he appreciated this kindness,
and would take care of the bank.  Before this, a creditor
of Buente was pressing him for payment of his claim,
and this claim was taken care of by the bank giving a
check for a part of the claim directly to this creditor.
This must have been in settlement of the entire claim, for
it was not listed among Buente's liabilities.  The bank
official knew, of course, of the bill of sale to the wife,
which in itself was suggestive of insolvency, and perhaps
of an intent to defraud.  If intended as security merely
for $1,000, there is no reason why a mortgage should not
have been executed, instead of an absolute bill of sale.
The bank knew of other claims against Buente, and a jury
was justified in finding that the bank knew or should, in
the exercise of ordinary care, have known of Buente's in-
solvency.  See *Bank v. Jewelry Co.,* 123 Iowa, 432; *Cole-
man v. Decatur Egg Case Co.,* 186 Fed. 136 (108 C. C.
A. 248); *Boudinot v. Hamann,* 117 Iowa, 23; *Jackman
v. Bank,* 125 Wis. 465 (104 N. W. 98, 115 Am. St.
Rep. 955); *Grant v. Dry Goods Co.,* 23 S. D. 195 (121

N. W. 95). That the bank intended to secure itself to the exclusion of other creditors is a fair inference from the testimony. *Grant v. Dry Goods Co., supra; Ferguson v. Lederer Co.,* 128 Iowa, 286.

It affirmatively appears that the bank official who took the mortgage made no inquiry of Buente as to his financial condition, and that the making of the bill of sale was the immediate cause for demanding security of the bank indebtedness. That these facts and circumstances were enough to take the case to a jury, see *Coleman v. Decatur Egg Case Co., supra; Ferguson v. Lederer Co., supra.* Appellant predicates its entire case upon *Burnham v. Ft. Dodge Grocery Co.,* 144 Iowa, 577. The opinion in that case supports the charge as given by the trial court, and, although the decision was against the claim of preference, the action was in equity, and we were there compelled to find the very truth; whereas in this case the only proposition involved is, Was there enough testimony to take the case to a jury?

We find no error in the record, and the judgment is *affirmed.*